WILLBANKS *v.* BIBLER.

4-8975                                          224 S. W. 2d 33

Opinion delivered November 14, 1949.

*Bob Bailey, Jr.,* and *Bob Bailey,* for appellant.
*Reece Caudle* and *Richard Mobley,* for appellee.

MINOR W. MILLWEE, Justice. The question presented by this appeal is whether appellees are entitled to an extension of time to cut and remove timber beyond that specified in a timber deed from appellants. The chancellor found that the preponderance of the evidence showed the making of a valid extension agreement and that appellees relied upon appellants' agreement to cut the timber. Appellees were granted an additional 90 days within which to cut and remove the timber.

Appellants, H. C. Willbanks and wife, Novella, own 110 acres of land in Pope County as tenants by the entirety. Appellees are five members of the Bibler family who are engaged as partners in the sawmill business under the name of Bibler Brothers. On July 23, 1946, appellants, in consideration of $900 paid, executed and delivered a deed to appellees conveying all pine timber over seven inches in diameter on the 110-acre tract. It was provided that the timber should be cut and removed within one year from the date of the deed.

It is undisputed that soon after execution of the deed the parties agreed that appellants should have the job of cutting and skidding the timber for appellees at $7.00 per thousand feet. Appellants cut a part of the timber in the fall of 1946 under this agreement.

The testimony on behalf of appellees is to the effect that appellants then requested permission to cut another tract of timber known as the Rose tract before they finished cutting the timber in controversy; that this permission was granted and that appellants on several occasions before and after expiration of the one-year period stated and agreed that the time for cutting and removing the balance of the timber in controversy should be extended. Odus Bibler testified that the partnership had advanced money to appellant, H. C. Willbanks, to buy the Rose tract and that Willbanks wanted to cut it before he finished cutting the 110-acre tract; and that it was agreed that the time for cutting the timber on the 110-acre tract should be extended in order that this might be done.

Glen Bibler, another partner, testified that he went to Willbank's home about June 1, 1947, and asked H. C. Willbanks when he was going to cut the balance of the timber and the latter stated in Mrs. Willbanks' presence that he would start cutting in a few days. He also went back in September, 1947, and offered to send a crew out to cut the timber, but Willbanks stated that he wanted to cut it himself but had been delayed; that he would start cutting in about two weeks and reassured Bibler that he could have all the time he wanted to remove the timber. The Biblers also testified that shortly before and after expiration of the one-year period they sent others interested in hauling the timber to see appellants. These parties corroborated the testimony of appellees as to appellants' agreement to extend the time.

Appellants testified that they stopped cutting the timber on directions from appellees. They denied the statements attributed to them by appellees' witnesses and denied that there was any agreement on their part to extend the time beyond that fixed in the deed. Shortly before the institution of the present suit, appellee, Glen Bibler, received the following letter from appellant, H. C. Willbanks: "Mar. 30-48. Mr. Glen Bibler: Please send me a statement of what I owe you on that $40 you had on the Books. There was some Lumber and some log cutting that goes on that account. About this timber on my place. Most of this that's not cut is on Land that my wife's mother deeded to her and she won't let me cut it. So you might as well forget this timber. That's why I haven't cut this timber long ago. Homer Willbanks."

Mrs. Willbanks testified that the uncut timber was on land which her mother deeded to appellants jointly.

It is, of course, competent for the parties to a timber deed to extend the time fixed for cutting and removal of the timber sold, and general rules govern the validity of agreements providing for such extensions. 54 C.J.S., Logs and Logging, § 19c (1) (a). There is considerable division in the authorities as to whether such extension agreements may be entered into orally. 34 Am. Jur.,

Logs and Timber, § 34. This court is committed to the rule that parties who make a written contract may, subsequent to its execution, modify it and substitute a valid oral agreement therefor. *Dodson* v. *Wade,* 193 Ark. 534, 101 S. W. 2d 182; *Ferguson* v. *The C. H. Triplett Co.,* 199 Ark. 546, 134 S. W. 2d 538.

In *Valley Planing Mill Co.* v. *Lena Lumber Co.,* 168 Ark. 1133, 272 S. W. 860, the court said: ''The general rule is that a material modification of a contract within the statute of frauds must be in writing in order to be valid and binding. Such a contract cannot be modified in essential parts by parol agreement so as to be valid against a plea of invalidity under the statute of frauds. *Arkmo Lumber Co.* v. *Cantrell,* 159 Ark. 445, 252 S. W. 901. There is a marked difference, however, between a modification of a written contract in the essentials required to meet the statue of frauds and an agreement for a substituted method of performance not within the statute. The former is required to be in writing in order to be enforceable as against a plea of the statute of frauds, whereas the latter is valid if in parol. The reason of the distinction is that the purpose of the statute of frauds is to require contracts to be certain and definite which it attempts to regulate, but does not attempt to regulate a substituted mode of performance thereof not within the statute.''

A valid agreement for an extension was held to have been shown in *Arkansaw Trading Co.* v. *Southwestern Veneer Co.,* 160 Ark. 286, 254 S. W. 488, where the court said: ''What was said between the parties amounted to an agreement between them for an additional year in which to remove the timber. The fact that appellee forbore its legal right to remove the timber within the two-year period constituted sufficient consideration to support the extension of time accorded appellee by appellant. *Nothwang* v. *Harrison,* 126 Ark. 548, 191 S. W. 2.''

In *Cooksey* v. *Hartzell,* 120 Ark. 313, 179 S. W. 506, the appellant purchased certain timber from Young under a deed allowing two years in which to remove. Within the two-year period Young sold the land to ap-

pellee who agreed to remove the timber for appellant at a stipulated price. After appellee failed to carry out his oral agreement, he interfered with the crew sent by appellant to cut the timber. This court held that the time for cutting did not run against the appellant's rights until the interference was removed.

The recent case of *Hurley* v. *Horton,* 213 Ark. 564, 211 S. W. 2d 655, involved a sale of timber by the appellant to the appellee under a contract providing a reasonable time to remove. In that case we said: "If when appellee was ready to cut the timber, and at a time when he had the right to do so, he was told by appellant that there was no hurry, and not to rush, he was misled to his detriment and equitable estoppel arose against claiming a subsequent forfeiture unless and until [appellee] was told that more than a reasonable time to remove the timber would not thereafter be granted."

The holdings in the Cooksey and Hurley cases, *supra,* are in accord with the general rule that failure to remove timber within the time fixed by the deed or contract is excused where such failure is caused by the act of the vendor. 54 C.J.S., Logs and Logging, § 19 c (2) d. This rule is based on the principle that he who prevents the doing of a thing shall not avail himself of the non-performance he has occasioned. 34 Am. Jur., Logs and Timber, § 36.

It is admitted that appellants, after delivery of the deed, agreed to cut the timber for appellees at a stipulated price. Whether appellees' failure to remove the timber was occasioned by acts of the appellants, and, whether appellees were misled by repeated representations that the time for removal of the timber would be extended, were highly disputed questions of fact. We think the preponderance of the evidence supports the conclusion of the chancellor on these issues and the decree is, therefore, affirmed.