McKAY AND COMPANY *v.* Charles R.
GARLAND, et al.

CA 85-126                                   701 S.W.2d 392

Court of Appeals of Arkansas
Opinion delivered January 8, 1986
[Rehearing denied February 5, 1986.]

*Catlett & Stubblefield*, by: *Graham Catlett*, for appellant.

*Richard L. Smith, P.A.*, by: *Fredrick S. Wetzel, III*, for appellee.

JAMES R. COOPER, Judge. The central issue on appeal is whether the chancellor erred in failing to find that the appellees breached the implied covenant of good faith arising out of their exclusive listing agreement with the appellant realty company. We reverse the chancellor's decision, and hold that the appellees acted in bad faith by selling their residence to a purchaser procured by the appellant.

The appellees hired a contractor, G. Pat Murtha, to build their new home for the sum of $127,935.00. As an incentive, the builder agreed to purchase the home then owned by the appellees and to give them a $113,000.00 credit towards the purchase price of the new house. The builder and the appellees also agreed that, until the new home was completed, the appellees were free to attempt to sell their home at a price in excess of $113,000.00. The appellees then entered into an exclusive listing contract with the appellant, giving the appellant the right to sell the old house for a gross sales price of $127,000.00. The exclusive listing agreement provided that it would expire at the end of sixty (60) days, but the contract provided that the appellant would be entitled to a commission if, within six (6) months after the expiration date, the house was sold as a result of information provided by the appellant during the listing period.

During the listing period, the appellant presented an offer by the Williamses, who offered to purchase the old house for $115,000.00. The appellees rejected the offer because it would have netted them less than $113,000.00, the credit they were entitled to from Murtha. The Williamses rejected the appellees' counteroffer, and no further negotiations took place between the Williamses, the appellees, and the appellant.

After the exclusive listing agreement expired, the appellees telephoned the Williamses and discussed arranging the sale of their residence through Murtha, the builder. Murtha never participated in any of the negotiations between the Williamses and the appellees, but the Williamses and the appellees agreed that the sale would be made to Murtha, who would then convey to

the Williamses.

After a trial on the merits, the chancellor held that the sale to the builder did not result from information provided by the appellant during the exclusive listing period. From that decision, comes this appeal.

On appeal, the appellant argues that the sale to the builder was a sham conveyance arranged solely to defeat the appellant's claim to a broker's commission. We agree with the appellant, for the two-step transaction which resulted in title to the house vesting in the Williamses was merely a means of avoiding payment of the appellant's commission.

■ We review chancery cases *de novo*, and do not reverse the chancellor unless his findings are clearly erroneous or against the preponderance of the evidence. Ark. R. C. P. Rule 52(a); *Reeder* v. *Arkansas Louisiana Gas Co.*, 6 Ark. App. 385, 644 S.W.2d 291 (1982). In the case at bar, we hold that the chancellor's decision is against the preponderance of the evidence.

■ It has long been the law in Arkansas that where a realtor who has been employed to sell land introduces a purchaser to the seller, and a sale results, the realtor is entitled to a commission even though the ultimate sale is made directly by the owner, *Scott* v. *Patterson & Parker*, 53 Ark. 49, 13 S.W. 419 (1890), even though the sale was made after the expiration of the listing agreement. *Beck* v. *Neal*, 228 Ark. 186, 306 S.W.2d 875 (1957).

The record shows that Murtha was not a party to any of the negotiations leading up to the sale from the appellees to the Williamses, and he testified that he had never even met the Williamses. All the negotiations were between the appellees and the Williamses. The Williamses presented the offer to the appellees, and Murtha accepted it on the terms presented. Although the two transactions were supposedly independent of each other, the two sales closed simultaneously, even though the appellees occupied their new home for about two months before the closing dates. It is also significant to note that no closing statement was ever prepared on the sale from the appellees to Murtha.

■ The evidence shows that Williams was concerned about the propriety of the two-step transaction and that Mr. Williams and the appellees discussed the possibility that the appellant would claim a commission. Appellee James Garland, who had previously worked for the appellant as a salesman, agreed with the Williamses that if a commission had to be paid, he would pay it. We hold that the evidence clearly shows that the appellees were the true sellers of their home to the Williamses, and that Murtha was simply a "straw man".

We reverse and remand this case to the chancellor, with instructions to enter judgment in favor of the appellant for its commission, and for all other relief deemed proper by the chancellor, including the award of interest.

Reversed and remanded.

CRACRAFT, C.J., and CORBIN, J., agree.