_____

No. 95-1589
No. 95-1648
_____

Vigoro Industries, Inc.,      *
                                        *

    Plaintiff - Appellant/      *
    Cross-Appellee,           *
                                          *

    v.                              *
                                        *

Kenneth Crisp,           *
                                        * Appeals from the United States

    Defendant - Appellee/      * District Court for the
    Cross-Appellant,         * Eastern District of Arkansas.
                                          *

Cleveland Chemical Company of    *
Arkansas, Inc.; James M.        *
Sanders; Michael W. Sanders;    *
Dennis E. Cavette; Don         *
Scarbrough, Jr.; Donald R.     *
Washburn,                  *
                                          *

    Defendants - Appellees,     *
                          _____

Submitted: November 17, 1995

Filed: April 29, 1996
_____

Before McMILLIAN, WOLLMAN, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

    Vigoro Industries, Inc., commenced this unfair competition action against former employees of its farm supply store in Marvell, Arkansas, and the competitor that hired them away, Cleveland Chemical Company. Vigoro's former manager, Kenneth Crisp, counterclaimed for money allegedly owing under Vigoro's incentive compensation plan. Following a one-week bench trial, the

district court[1] awarded Vigoro $75,000 against Crisp for breach of his employee's duty of loyalty. The court dismissed Vigoro's claims against the other defendants and awarded Crisp $36,788.40 on his counterclaim. Vigoro appeals, arguing primarily that clearly erroneous findings of fact have produced a grossly inadequate damage award. Crisp cross appeals. We affirm the disposition of Vigoro's claims, reverse the award in favor of Crisp on his counterclaim, and remand for entry of an amended final judgment.

## I.  Background.

We will only briefly summarize the relevant facts, which are set out in detail in the district court's thorough published opinion, Vigoro Industries, Inc. v. Cleveland Chemical Co., 866 F. Supp. 1150 (E.D. Ark. 1994).

Crisp managed a successful farm supply store in rural Marvell for twenty-four years. After Vigoro acquired the store in 1986, Crisp often considered leaving. Finally, in late 1992, he approached Cleveland Chemical, a wholesale supplier that had expressed an interest in entering the retail market in the Marvell area. In February 1993, Crisp purchased commercial property in Marvell. In May, he committed to join Cleveland Chemical, offered his property as the site for a new Cleveland Chemical store, and began detailed discussions concerning facilities, equipment, and personnel. Crisp provided Cleveland Chemical with estimated salaries and wages, drawing on his knowledge and experience as a Vigoro farm store manager.

On July 16, 1993, Crisp sent a letter of resignation to Vigoro management, advising that he would stay on for a short time to ease the transition. Shortly before resigning, Crisp invited the other

---

[1]The HONORABLE GARNETT THOMAS EISELE, United States District Judge for the Eastern District of Arkansas.

Marvell employees to join him at the new Cleveland Chemical store. His co-workers responded favorably, and Crisp stated in his resignation letter that all of the Marvell employees would be leaving with him. Critical among the dozen who left were three salesmen, appellees Dennis Cavette, Don Scarbrough, and Donald Washburn, who had valuable relationships with nearly all of Vigoro's farmer-customers. On July 28, 1993, Crisp sent a letter to the farmers he considered Vigoro's best customers. Addressed to "our valued customers," the letter advised that the employees would soon leave Vigoro for Cleveland Chemical, apologized for any inconvenience, and stated, "we feel this change will enable us to offer you better services in the future. As always, we look forward to serving any needs you might have."

Crisp left Vigoro on August 7, 1993, and began working for Cleveland Chemical. The other Marvell employees joined him later that month. Though Vigoro brought in a new manager and sales force as quickly as possible, it lost some seventy percent of its Marvell customers to its new competitor, and the Marvell Farmarket began operating at a substantial loss. Vigoro sued the former employees, Cleveland Chemical, and Cleveland Chemical's principal officers, asserting claims for misappropriation of trade secrets, breach of fiduciary duties, conspiracy to breach those duties, and intentional interference with business expectancies. On appeal, Vigoro challenges the inadequate damage award against Crisp and the dismissal of its claims against the Cleveland Chemical defendants and former salesmen Cavette, Scarbrough, and Washburn.[2]

## II. Claims Against Kenneth Crisp.

Crisp was an at-will employee at Vigoro. He signed no agreement or covenant not to compete with Vigoro if he left.

---

[2]Vigoro dismissed claims against the non-sales employees at the close of its case at trial.

Therefore, the district court ruled that Crisp had a right to leave and was free to notify his fellow workers and Vigoro customers of his intent to leave. However, before leaving, Crisp had a duty of loyalty which precluded him from soliciting other employees or customers to leave Vigoro with him. We agree with this analysis. Arkansas law strikes a careful balance between an employer's right to employee loyalty, and an employee's right -- absent contrary contractual commitment -- to resign and pursue his career with a competing employer. See Witmer v. Arkansas Dailies, Inc., 151 S.W.2d 971, 973-74 (Ark. 1941). Even corporate officers and directors, who have fiduciary duties to the corporation beyond those of less essential employees, are free to resign and go into competition, so long as they remain loyal prior to resigning. As the court said in Raines v. Toney, 313 S.W.2d 802, 809 (Ark. 1958) (citations omitted):

> It is, however, a common occurrence for corporate fiduciaries to resign and form a competing enterprise. Unless restricted by contract, this may be done with complete immunity because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. They cannot while still corporate fiduciaries set up a competitive enterprise . . . or resign and take with them the key personnel of their corporations for the purpose of operating their own competitive enterprise. But they can, while still employed, notify their corporation's customers of their intention to resign and subsequently go into business for themselves, and accept business from them when offered to them.

See also Evans Lab., Inc. v. Melder, 562 S.W.2d 62, 64 (Ark. 1978), which struck down a two-year covenant not to compete because it created "undue interference with . . . the public's right to the availability of a serviceman it prefers to use."

Applying this standard, the district court found that Crisp had breached his duty of loyalty to Vigoro in two respects. First,

his July 28 letter to key Vigoro customers "crosse[d] the line from simple notification to an active solicitation at a time when Mr. Crisp was still working for Vigoro."  866 F. Supp. at 1165.  Second, Crisp interfered with Vigoro's relations with its other Marvell employees by securing commitments from them to join him at Cleveland Chemical while he was still a Vigoro employee.

Vigoro of course takes no issue with these findings that Crisp breached his duty of loyalty, though it casts Crisp's conduct in a far more sinister light than did the district court.  Crisp, on the other hand, argues that the district court's findings of breach of duty are clearly erroneous.  We disagree.  The findings that Crisp's pre-resignation solicitation of co-workers and Vigoro customers breached his duty of loyalty are well supported in the record.  That brings us to the crucial issue on this appeal, the district court's award of $75,000 damages for that breach.

### III.  Damages for Crisp's Misfeasance.

Vigoro attacks the district court's damage award at three levels. First, claiming that Crisp's breach of duty decimated Vigoro's workforce and purloined seventy percent of its customer base, Vigoro argues that the court should have adopted one of Vigoro's "uncontested" five-year damage estimates -- $2.19 million lost going concern value, $3.5 million unjust enrichment to Cleveland Chemical, or $4.7 million lost profits to Vigoro. Second, Vigoro argues that the court should have assessed additional damages because Crisp misappropriated trade secrets and confidential customer information.  Third, Vigoro argues that the district court improperly ignored specific additional items of damage.  We will take up these points in that order.

**A. Lost Profit Damages for Breach of Duty.**  The district court rejected Vigoro's damage theories as without factual support.  The court found that the other Marvell employees were loyal to Crisp

-5-

and would have left Vigoro to join him at Cleveland Chemical if Crisp had waited until after he resigned before soliciting them. After carefully surveying competitive conditions in the Marvell local market, the court further found that most of Vigoro's customers would have chosen to do business with Crisp at Cleveland Chemical if he had not solicited them before leaving Vigoro. Thus, the court found that Vigoro's damages should be limited to the harm caused immediately after Crisp's departure by his pre-resignation soliciting. The court estimated this damage at $75,000. See 866 F. Supp. at 1172.

"In a bench trial, ascertaining the plaintiff's damages is a form of factfinding that can be set aside only if clearly erroneous." Hall v. Gus Constr. Co., 842 F.2d 1010, 1017 (8th Cir. 1988). Here, the district court was clearly correct in rejecting Vigoro's extravagant lost profit theories, which irrationally attributed all of Vigoro's competitive losses to the fact that Crisp had jumped the gun by three weeks in soliciting Vigoro's employees and customers. That left the district court with the difficult task of estimating what damage in fact flowed from Crisp's limited breach of duty. While we might have been inclined to assign more financial significance to the fact that Crisp took all of Vigoro's work force, with advance notice to customers but inadequate warning to Vigoro, the question for an appellate court "is not whether it would have made the findings the trial court did, but whether on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123 (1969) (quotation omitted). Applying this standard, we conclude that the breach-of-duty damages found by the district court are not clearly erroneous.

**B. Damages for Misappropriation of Confidential Information.** Vigoro claims that Crisp is liable under the Arkansas Theft of Trade Secrets Act, Ark. Code Ann. § 4-75-601 et seq., and the

common law doctrine that protects an employer's confidential business information, see Tlapek v. Chevron Oil Co., 407 F.2d 1129, 1134-35 (8th Cir. 1969), for misappropriating the following types of customer information: (1) the identity of Vigoro's farmer customers; (2) each farmer's planting history, types of products purchased, and credit history; and (3) whether the farmer allows a farm store salesman to "scout" the farm for insects and to perform soil analyses. The district court concluded that this information is not entitled to trade secret protection because it is "readily ascertainable." See Ark. Code Ann. § 4-75-601(4)(A). We agree. The identity of Vigoro's two hundred farm store customers could be easily discovered because they farm in a small geographic area. Interested farmers would readily provide the other types of information because that helps them purchase the most appropriate farm supplies.

Although confidential and valuable customer information that would be costly and time consuming to duplicate qualifies for trade secret protection, readily ascertainable customer information does not. Compare Allen v. Johar, Inc., 823 S.W.2d 824, 827 (Ark. 1992), and United Centrifugal Pumps v. Cusimano, 9 U.S.P.Q.2d 1171, 1173-74 (W.D. Ark. 1988), with Hi-Line Elec. Co. v. Moore, 775 F.2d 996, 997 (8th Cir. 1985). The issue is fact intensive. In this case, neither Crisp nor the salesmen took any written customer information when they left Vigoro. They brought to Cleveland Chemical only their sales experience and their knowledge of the local customers. Absent an enforceable covenant not to compete, a former employer may not prevent a former employee from exploiting this kind of knowledge with a new employer. The former employer should not be permitted to achieve this anticompetitive objective indirectly through an overly-expansive definition of customer trade secrets. As the court said in Fleming Sales Co. v. Bailey, 611 F. Supp. 507, 514-15 (N.D. Ill. 1985):

> All the information [plaintiff] tries to wrap in the [Trade Secret] Act's mantle is nothing more than the kind of knowledge any successful salesman necessarily acquires through experience. In the Act's terms, it is information 'readily ascertainable by proper means' . . . . Nothing prevents such an employer from guarding its interests by a restrictive covenant. But it would really be unfair competition to allow the employer *without* such a covenant to obtain trade secret status for the fruits of ordinary experience in the business, thus compelling former employees to reinvent the wheel as the price for entering the competitive market.

We affirm the district court's determination that Crisp did not misappropriate trade secrets or confidential customer information.

**C. Miscellaneous Damage Claims.** Vigoro's remaining damage contentions do not warrant extended discussion. First, Crisp's breach of his duty of loyalty does not require him to forfeit compensation already earned. See Baldwin v. Prince, 578 S.W.2d 240, 243 (Ark. 1979). Second, the district court properly rejected Vigoro's claim for $94,000 in bad debt losses allegedly caused by Crisp during his final months with the company because Vigoro failed to raise this issue in its pleadings or at trial. Third, Vigoro's damages for Crisp's breach of duty were not capable of exact determination, so prejudgment interest may not be awarded. See Lovell v. Marianna Fed. Sav. & Loan Ass'n, 589 S.W.2d 577, 578 (Ark. 1979); Red Lobster Inns of Am. v. Lawyers Title Ins. Corp., 656 F.2d 381, 386-87 (8th Cir. 1981). Fourth, Crisp did not act with the malice that would support an award of punitive damages, see Stein v. Lukas, 823 S.W.2d 832, 834 (Ark. 1992), and there is no basis for an award of attorneys' fees, see Security Pac. Hous. Servs., Inc. v. Friddle, 866 S.W.2d 375, 379 (Ark. 1993).

For the foregoing reasons, the district court's award of $75,000 damages against Kenneth Crisp is affirmed.

## IV. Claims Against the Cleveland Chemical Defendants.

Vigoro argues that the Cleveland Chemical defendants conspired with Crisp to breach his duty of loyalty to Vigoro and tortiously interfered with Vigoro's customer and employee expectancies. The district court found expressly to the contrary -- that Crisp's breach of duty was not done in concert with any other defendant, and that the actions of the Cleveland Chemical defendants in hiring Crisp and the other Vigoro employees and in opening a retail farm store in Marvell constituted proper competition rather than tortious interference with Vigoro's expectancies. These findings are not clearly erroneous. Vigoro's claims against the Cleveland Chemical defendants were properly dismissed. See Fisher v. Jones, 844 S.W.2d 954, 959 (Ark. 1993); Walt Bennett Ford, Inc. v. Pulaski County Special Sch. Dist., 624 S.W.2d 426, 429 (Ark. 1981); Restatement (Second) of Torts §§ 767-68 (1977).

## V. Claims Against Cavette, Scarbrough, and Washburn.

Vigoro claims that Cavette, Scarbrough, and Washburn also intentionally interfered with Vigoro's customer expectancies. Like Crisp, these salesmen were at-will employees of Vigoro, and none had signed a covenant not to compete. The district court found that they had a right to leave Vigoro and join Cleveland Chemical, that they did not induce or participate in Crisp's pre-resignation breach of duty, that they did not disclose any confidential Vigoro information to Cleveland Chemical, and that they merely made proper use of their business skills and experience in competing with Vigoro. These findings are not clearly erroneous and required dismissal of Vigoro's claims against these defendants.

## VI. Crisp's Counterclaim.

Because of Crisp's success as a Vigoro store manager, Vigoro provided him the most lucrative incentive compensation plan of any

-9-

Vigoro farm store manager.  However, his 1993 incentive plan permitted Vigoro to deduct "amounts Management deems appropriate as a penalty for mismanagement of total assets of the Farmarket."  After Crisp left, Vigoro refused to pay him a bonus for the year in which he resigned, citing this mismanagement provision.  Crisp asserted a counterclaim for the bonus that would otherwise have been owing.  The district court ruled that Vigoro could not properly refuse to pay a bonus because Crisp had managed the Farmarket assets in Vigoro's best interests.  The court awarded Crisp $36,788.40 in 1993 incentive compensation.

On appeal, Vigoro argues that the incentive compensation plan left this mismanagement issue to its discretion (Vigoro may deduct "amounts Management deems appropriate"); therefore, the district court erred in reviewing _de novo_ Vigoro's decision to pay no bonus.  We agree.  When a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable.  See Amant v. Kidde, Inc., 756 F.2d 685, 686 (8th Cir. 1985).  At most, courts will step in "when the party who would assume the role of sole arbiter is charged with fraud, bad faith, or a grossly mistaken exercise of judgment."  Golden v. Kentile Floors, Inc., 512 F.2d 838, 847 (5th Cir. 1975) (involving pre-ERISA plan benefits).

In this case, Vigoro's management decided that Crisp deserved no incentive bonus in a year in which he breached his duty of loyalty by soliciting employees and customers to join him in a competing venture.  This cannot be called a bad faith or grossly mistaken exercise of judgment.  Cf. O'Madigan v. General Motors Corp., 202 F. Supp. 190, 193 (E.D. Mo. 1961), aff'd, 312 F.2d 250 (8th Cir. 1963).  Accordingly, the district court erred in awarding Crisp $36,788.40 on his counterclaim.

## VII. Conclusion

We reverse the district court's award of $36,788.40 in favor of Kenneth Crisp on his counterclaim. We otherwise affirm the district court's Amended and Substituted Judgment. The case is remanded for entry of an amended final judgment consistent with this opinion, with interest on that judgment under 28 U.S.C. § 1961 to run from November 4, 1994. See Fed. R. App. P. 37. We award costs on appeal to appellees.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.