_____

No. 95-3903
_____

Jerry Morrison and          *
Helen Morrison,             *
                            *
          Appellants,       *
                            *
     v.                     *     Appeal from the United States
                            *     District Court for the Eastern
Back Yard Burgers, Inc.,    *     District of Arkansas.
                            *
          Appellee.         *

_____

Submitted:  April 12, 1996

Filed:  August 8, 1996
_____

Before MAGILL and LOKEN, Circuit Judges, and GOLDBERG,[*] Judge.

_____

GOLDBERG, Judge.

   This case involves plaintiffs' attempt to prove a common law fraud claim and a constructive fraud claim arising from a franchise agreement with evidence of a violation of administrative regulations.  Plaintiffs Jerry and Helen Morrison filed suit against defendant Back Yard Burgers ("BYB") seeking damages and attorney's fees for, among other things, common law fraud arising from alleged misrepresentations concerning projected profits.  In response, BYB filed a counterclaim seeking a preliminary injunction to prohibit plaintiffs from continuing to use its trademark. BYB

_____

[*]THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

-1-

also sought money damages for unpaid franchise fees and advertising contributions pursuant to the franchise agreement, and prejudgment interest. BYB then sought summary judgment with respect to all claims asserted against it, as well as its counterclaim. The district court granted defendant's cross motion for summary judgment and awarded defendant monetary damages.

Plaintiffs appeal to this Court, making the following arguments: (1) the district court improperly held that evidence of violations of the Federal Trade Commission Act, 15 U.S.C. §§ 41 et. seq. (1994), regarding projections of future earnings do not qualify under the "bad faith" exception to the common law rule that speculative business projections can not form the basis of a fraud claim; and (2) the district court erred in granting summary judgment because the false statements are actionable under a constructive fraud theory because of their tendency to deceive others. For the reasons set forth below, we affirm the district court's grant of defendant's motion for summary judgment.

## I.  BACKGROUND

On January 18, 1993, plaintiffs Jerry and Helen Morrison entered into a franchise agreement with Back Yard Burgers, a Delaware corporation with its principal place of business in Memphis, Tennessee. The plaintiffs' purpose in entering the agreement was to build and operate a fast food restaurant in Russellville, Arkansas. Before plaintiffs entered into the franchise agreement, they met with BYB personnel. They also met with two BYB franchisees, Joe Weiss and Tommy Hilburn. Weiss provided plaintiffs with financial statements from his franchises in the Memphis area, and Hilburn provided financial information from his Little Rock franchises. Plaintiffs allege that Weiss assured them that they could expect to make $750,000 in annual sales at their Russellville franchise. The actual gross sales for

plaintiffs' Russellville Back Yard Burgers amounted to approximately $235,000 per year.

At the time of Weiss' representation, Federal Trade Commission ("FTC") regulations prohibited a franchisor from making representations about future sales to a potential franchisee, unless they are supported by demographic research, set forth in a legible document, and accompanied by a disclaimer.[1]  BYB failed to comply with these requirements.  There has never been a BYB site in Russellville previous to plaintiffs' franchise, and BYB had not conducted a marketing survey of that area.  Joe Weiss did not set forth his representations in a single legible document, and did not

---

[1]FTC Rule 16 CFR § 436.1 (1995) provides in part:

In connection with the advertising, offering, licensing, contracting, sale, or other promotion . . . of any franchise, . . . it is an unfair or deceptive act or practice . . . for any franchisor or franchise broker:

***

(b) To make any oral, written, or visual representation to a prospective franchisee which states a specific level of potential sales, income, gross or net profit for that prospective franchisee, or which states other facts which suggest such a specific level, unless:

(1) At the time such representation is made, such representation is relevant to the geographic market in which the franchise is to be located;

(2) At the time such representation is made, a reasonable basis exists for such representation and the franchisor has in its possession material which constitutes a reasonable basis for such representation, and such material is made available to any prospective franchisee . . . ;

(3) Such representation is set forth in detail along with the material bases and assumptions therefor in a single legible written document whose text accurately, clearly and concisely discloses such information, and none other than that provided for by this part or by State law not preempted by this part. . .;

(4)  The following statement is clearly and conspicuously disclosed in the document described by paragraph (b)(3) of this section in immediate conjunction with such representation and in not less than twelve point upper and lower-case boldface type:

CAUTION

These figures are only estimates of what we think you may earn.  There is no assurance you'll do as well.  If you rely upon our figures, you must accept the risk of not doing as well.

make a specific disclaimer when presenting sales information. However, prior to meeting with Weiss, BYB sent plaintiffs a Uniform Franchise Offering Circular, which is required by the FTC, and which contained a general disclaimer as to earnings projections.

Both Barry Pitts, Director of Franchise Development for BYB at the time, and Lattimore Michael, BYB's President, knew that Joe Weiss presented potential franchisees with financial projections or specific financial statements of franchisees in violation of the FTC regulations. At the time of the meeting with plaintiffs, Joe Weiss not only owned two franchises, but he was also the Secretary-Treasurer of BYB and a member of its board of directors.

## II.   DISCUSSION

In reviewing a district court's grant of summary judgment, we apply the same standards as the district court. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995). The Court will affirm the grant of a summary judgment motion if the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

## A.   Profit Projections under Common Law Fraud

Under Arkansas law, the tort of fraud, misrepresentation or deceit consists of five elements:  (1) a false representation of a material fact; (2) knowledge that the representation is false, or an assertion of fact which he or she does not know to be true; (3) intent to induce action or inaction in  reliance upon the representations; (4) justifiable reliance on the representation; and (5) damages suffered as a result of the reliance. Grendell v. Kiehl, 291 Ark. 228, 230, 723 S.W.2d 830, 832 (1987).

In applying the first prong of this test, ascertaining whether defendant made a false statement of material fact, the general rule in Arkansas is that "an action for fraud or deceit may not be predicated on representations relating solely to future events."  Delta School of Commerce, Inc. v. Wood, 298 Ark. 195, 200, 766 S.W.2d 424, 427 (1989). Representations related solely to future events are considered to be mere opinion under Arkansas law, rather than a matter of accurate knowledge as would be a statement of fact.  Delta, 298 Ark. at 199, 766 S.W.2d at 426 ("In general, an expression of opinion, i.e., a statement concerning a matter not susceptible of accurate knowledge, cannot furnish the basis for a cause of action for deceit or fraud."); see also, Grendell, 291 Ark. at 231, 723 S.W.2d at 832 (statement in sales presentation that an oil well would pump "fifty barrels a day" was mere puffery and not actionable).

This is also the rule adopted by other circuits and one district court in this circuit.  See, e.g., Hardee's of Maumelle, Arkansas, Inc. v. Hardee's Food Sys., Inc., 31 F.3d 573, 579 (7th Cir. 1994) (rejecting plaintiff's assertion that the projected financial statements can support a claim of fraud because they are predictions or opinions regarding future profitability, not representations of pre-existing material fact); Hengel, Inc. v. Hot 'N Now, Inc., 825 F. Supp. 1311, 1321 (N.D. Ill. 1993); Carlock v. Pillsbury Co., 719 F. Supp. 791, 829 (D. Minn. 1989) (representations as to franchise start-up and operating costs "were predictions as to the future, not statements of past or present fact"); Brill v. Catfish Shaks of America, Inc., 727 F. Supp. 1035, 1045 (E.D. La. 1989) (franchisor's profit projections were not actionable where they were reasonable, based upon earnings of existing franchised restaurants).

Projections related to franchise profits are representations related to future events.  Without more, this suggests that plaintiffs have failed to state a claim under Arkansas common law

fraud theories and that summary judgment in favor of defendant was appropriate.

B. Violation of FTC Regulations as evidence of Bad Faith Exception to Common Law Fraud Rule

Plaintiffs argue that BYB's knowing violation of FTC regulations shows bad faith intent under an exception to the general state common law rule that mere opinion cannot support a fraud claim. This "bad faith" exception was enunciated in Delta School of Commerce, Inc. v. Wood, 298 Ark. 195, 766 S.W.2d 424 (1989). Assuming that BYB did in fact violate FTC regulations because its representations were not set forth on a single legible document, did not contain a specific disclaimer, and were provided without a reasonable basis, we nevertheless reject plaintiffs' argument.

Under the exception in Delta, a statement of future events may constitute fraud if the statement is false and the person making the representation or prediction knows it to be false at the time it is made. Delta, 298 Ark. at 199-201, 766 S.W.2d at 426-7. In Delta, a representative of the Delta School of Commerce advised Wood, a prospective student, to pursue a career as a nursing assistant rather than a career as a licensed practical nurse. The representative told Wood that the State of Arkansas would be eliminating the licensed practical nurse position, and that nursing assistants would take their place. The Arkansas state Supreme Court found that the representative knew that his statements regarding the state's intentions were untrue at the time, and that he made these statements to induce Wood to enroll in Delta's nursing assistant program.

The exception in Delta does not apply to the present case. Delta requires actual knowledge of falsity. Delta, 298 Ark. at 200, 766 S.W.2d at 427. Weiss's alleged projections pertained to

matters not subject to verification at the time the statements were made. The statements were opinion based upon accurate data from another market, and Weiss had no information about the actual market site. Weiss could not have known that his projections regarding plaintiffs' planned franchise would eventually prove to be false. Therefore, plaintiffs have failed to state an actionable claim based on the exception in <u>Delta</u>.

A knowing violation of the FTC regulations does not alter this conclusion. Violating 19 C.F.R. § 436.1 does not require the party to know that his or her representations are false at the time they are made. Thus, a violation of the FTC regulation does not meet the conditions necessary to qualify under the <u>Delta</u> bad faith exception. Application of the <u>Delta</u> exception hinges upon the knowledge that statements are false, not upon the knowledge that one is violating an administrative regulation. <u>Delta</u>, 298 Ark. at 200, 766 S.W.2d at 426.

Our denial of plaintiffs' attempt to support their state fraud claim with evidence of a knowing violation of 16 C.F.R. § 436.1. is consistent with other circuit's holdings that there is no private cause of action for violations of the Federal Trade Commission Act, 15 U.S.C. §§ 41 et seq. <u>R.T. Vanderbilt Co. v. Occ. Saf. & H. Rev. Com'n</u>, 708 F.2d 570, 574-5 n. 5 (11th Cir. 1983); <u>Fulton v. Hecht</u>, 580 F.2d 1243, 1248-9 n.2 (5th Cir. 1978); <u>Holloway v. Bristol-Myers Corp.</u>, 485 F.2d 986, 1002 (D.C. Cir. 1973); <u>Carlson v. Coca-Cola Co.</u>, 483 F.2d 279 (9th Cir. 1973). A plaintiff should not be permitted to plead violation of FTC regulations as part of a state common law fraud case. A decision to the contrary could be interpreted as substituting violation of FTC regulations for state law requirements, thereby effectively extending a private cause of action under the Federal Trade Commission Act.

Because we hold that plaintiffs fail to satisfy the first element of common law fraud concerning statements of material fact,

we do not need to consider whether plaintiffs satisfied the other four elements of common law fraud.

C.    Constructive Fraud

Plaintiffs' final argument is to plead under a theory of constructive fraud.  Constructive fraud is defined "as `a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others . . . Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.'"  Cardiac Thoracic and Vascular Surgery, P.A. v. Bond, 310 Ark. 798, 805, 840 S.W.2d 188, 192 (1992) (quoting Lane v. Rachel, 239 Ark. 400, 404, 389 S.W.2d 621, 624 (1965)) (emphasis in original).  In Bond, a seller defrauded a purchaser accidently and without moral culpability by making false representations regarding the number of additional square feet the lessor could lease in the future.  Between the time that the parties entered into the contract and the time that the buyer attempted to exercise its right to lease more space, the lessor was reorganized and new management gained control of the firm.  The new management refused to honor the contract.  Based on these facts, the Arkansas state Supreme Court upheld rescission of the contract.

A plea of constructive fraud relieves plaintiffs of the burden of proving scienter, or fraudulent intent.  Plaintiffs must still prove the other elements of common law fraud, including a false representation of a material fact and justifiable reliance upon the representation.  Bond, 310 Ark. at 806, 840 S.W.2d at 192-3.

Thus, the above analysis regarding false statement of material fact and the exception enunciated in Delta applies equally here.  As discussed above, Weiss's statements were mere opinion based upon actual data from an existing market.  Plaintiffs therefore fail to satisfy the requirement that the defendant make a misrepresentation

-8-

of fact to prove constructive fraud.  We therefore do not need to consider whether plaintiffs prove the other elements of constructive fraud.

### III.  CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment by the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.