## CANTRELL-WAIND & ASSOCIATES *v.* GUILLAUME MOTORSPORTS, INC.

CA 97-1186                                          968 S.W.2d 72

Court of Appeals of Arkansas
Division I
Opinion delivered May 6, 1998

*The Nixon Law Firm*, by: *David G. Nixon* and *Michael D. Holland*, for appellant.

*Gocio, Dossey & Reeves, PLC*, by: *Jerry B. Dossey*, for appellees.

SAM BIRD, Judge. Cantrell-Waind & Associates, Inc., has appealed from a summary judgment entered for appellee Guillaume Motorsports, Inc., in its action to recover a real-estate brokerage commission. Because we agree with appellant that the

circuit judge erred in his interpretation of the applicable law and because genuine issues of material fact remain to be tried, we reverse and remand.

On August 1, 1994, appellee, represented by its president and sole stockholder Todd Williams, agreed to lease real property in Bentonville to Kenneth Bower and Kay Bower. The lease gave the Bowers an option to purchase and provided for the payment of a commission to appellant, the real-estate broker in this transaction, as follows:

> In the event of the *exercise* of this option within the first twenty-four (24) month period, ten per cent (10%) of the monthly rental payments shall apply to the purchase price. Thereafter, this credit shall reduce two per cent (2%) per year until the expiration of the original lease term hereof, to the effect that the credit will be eight per cent (8%) during the third year, six per cent (6%) during the fourth year, and four per cent (4%) during the fifth year. The sales price shall be $295,000.00. GUILLAUME MOTORSPORTS, INC., agrees [to] pay CANTREL-WAIND & ASSOCIATES, INC., a real estate commission of $15,200.00 upon closing of sale of the property under this Option to Purchase, provided the *closing* occurs within two (2) years from the date of execution of the Lease with Option to Purchase.

The Bowers' attorney, Charles Edward Young III, notified Williams in writing on April 23, 1996, that the Bowers chose to exercise the option to purchase, and that they anticipated closing at the earliest possible date. Young also sent a copy of this letter to Samuel Reeves, appellee's attorney. Soon after this, Williams approached Mr. Bower and offered to credit him with one-half of the appellant's $15,200 commission if he would agree to delay closing until after August 1, 1996. Mr. Bower declined this offer.

Ruth Ann Whitehead, a loan officer at the Bank of Bentonville, notified Mr. Bower on July 19, 1996, that the loan had been approved and that she awaited notification of a closing date. In his deposition, Young said that he attempted to set a July closing date on behalf of the Bowers but had been told by Ms. Whitehead, Reeves, and a representative of the title company that Williams had told them he would be out of the country in late July and unavailable for closing until after August 1.

Young also said that he had asked Reeves if Williams would utilize a power of attorney for closing before August 1 but Williams refused. Williams did not leave the country and was in Bentonville July 22 through 25. Closing occurred on August 14, 1996, and the commission was not paid.

Appellant filed a complaint against Guillaume Motorsports, Inc., on August 12, 1996, for breach of contract. Appellee moved for summary judgment on the ground that it was under no obligation to close the transaction before August 1. In support of its motion, appellee filed the affidavits of Ms. Whitehead and Mr. Carroll, who stated that, to their knowledge, a closing date was not scheduled before August 14, 1996.

Appellee Williams also filed his affidavit stating that a closing date was not established before August 14, 1996, and that the Bowers had not demanded an earlier closing date. Further, he admitted: "While I did in fact approach Kenneth Bower with a proposal to reduce the purchase price if he would agree to establish a closing date after August 1, 1996, my offer was not accepted and no such agreement was made." He said although it would not have bothered him to put the closing off until after August 1, he did not think it was a "conscious decision" not to be available until after August 1.

In a hearing on the motion for summary judgment, counsel for appellee argued that neither the corporation nor Williams was under any obligation to close prior to August 1. He contended there was no bad faith to be inferred by the deliberate avoidance of a real estate commission that is keyed to a "drop-dead" date. He said the real estate broker agreed to the terms of the contract and was bound by it. Counsel pointed out the two separate terms used in the contract when referring to the option to purchase and the closing. The contract stated that to get the maximum discount in the purchase price the Bowers had to *exercise* the option before August 1, 1996. However, the clause referring to the commission stated that the transaction had to *close* by August 1. Counsel stated, "I believe my client had every right to do anything within his power, short of breaching his contract with this buyer,

to see that this closing didn't occur earlier than that date so he would not owe the commission."

In response to appellee's motion for summary judgment, appellant argued that appellee (by Williams) had a duty to act in good faith and that, in taking steps to prevent the transaction from closing before August 1, 1996, appellee had not acted in good faith. Appellant contended that all contingencies and requirements for the loan had been satisfied by July 19, 1996, and that Mr. and Ms. Bower had attempted to establish a closing date before August 1, but had been deliberately prevented from doing so by Williams's misrepresentations that he would be out of the country and unavailable to close until after August 1. Appellant attached as exhibits excerpts from the depositions of Ms. Whitehead, Mr. Young, Laura Tway (who assisted with closing), Mrs. Bower, Mr. Bower, Williams, and Mr. Carroll. Also attached was a copy of Mr. Young's May 28, 1996, letter to Mr. Reeves. In a supplemental response to the motion for summary judgment, appellant also requested summary judgment against appellee.

In his order granting summary judgment, the judge stated that appellee had no obligation to appellant to arrange for a closing date that would have entitled appellant to a commission and said that the real estate commission was "clearly avoidable" by appellee.

On appeal appellant argues that the trial court erred in ignoring Williams's prevention of a condition precedent as a material fact and that the trial court erred in granting summary judgment in appellee's favor. Appellant argues that, although appellee had no duty to insure that closing occurred before August 1, 1996, it did have a duty not to actively hinder or prevent the transaction from closing before that date. Appellee contends that the circuit court acted appropriately in refusing to extend its obligations beyond those created by the express terms of the contract and that Williams was under no obligation to make himself available for a closing date that would have entitled appellant to a commission.

The term of the contract providing that a commission would be due appellant only if closing occurred before August 1, 1996, is a condition precedent. *See Stacy v. Williams,* 38 Ark. App.

192, 834 S.W.2d 156 (1992). When a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable; however, courts will become involved when the party making the decision is charged with bad faith. *Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785 (8th Cir. 1996).

■ In *Willbanks v. Bibler*, 216 Ark. 68, 224 S.W.2d 33 (1949), the Arkansas Supreme Court held that "he who prevents the doing of a thing shall not avail himself of the nonperformance he has occasioned." *Id.* at 72, 224 S.W.2d at 35. *See also* Samuel Williston, *The Law of Contracts* § 677 (3d ed. 1961). This principle is expressed in 17A AM. JUR. 2d *Contracts* § 703 (1991):

> One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance. Even more broadly, where a promisor prevents or hinders the occurrence, happening, or fulfillment of a condition in a contract, and the condition would have occurred except for such hindrance or prevention, the performance of the condition is excused and the liability of the promisor is fixed regardless of the failure to perform the condition. Moreover, while prevention by one party to a contract of the performance of a condition precedent excuses the nonperformance of the condition, it must be shown that the nonperformance was actually due to the conduct of such party; if the condition would not have happened whatever such conduct, it is not dispensed with.

■ A party has an implied obligation not to do anything that would prevent, hinder, or delay performance. *See Housing Auth. of the City of Little Rock v. Forcum-Lannom, Inc.*, 248 Ark. 750, 454 S.W.2d 101 (1970); *Dickinson v. McKenzie*, 197 Ark. 746, 126 S.W.2d 95 (1939); *Townes v. Oklahoma Mill Co.*, 85 Ark. 596, 109 S.W. 548 (1908); *Smith v. Unitemp Dry Kilns, Inc.*, 16 Ark. App. 160, 698 S.W.2d 313 (1985); *City of Whitehall v. Southern Mechanical Contracting, Inc.*, 269 Ark. 563, 599 S.W.2d 430 (Ark. App. 1980).

■ ■ Comment b to section 225 of the *Restatement (Second) of Contracts* (1981) provides that the non–occurrence of a condition of a duty is said to be "excused" when the condition need no longer occur in order for performance of the duty to become

due: "It may be excused by prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing." The *Restatement (Second) of Contracts* § 205 (1981) states: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." This legal principle also applies to contracts providing for the payment of commissions to real estate agents. *McKay and Co. v. Garland*, 17 Ark. App. 1, 701 S.W.2d 392 (1986). Accordingly, we hold that the circuit court erred in failing to recognize that a duty of good faith and fair dealing was included in this contract and, therefore, appellee was obligated to not deliberately avoid closing the transaction before August 1, 1996.

Our above holding requires a determination of whether there is a genuine issue of material fact as to whether appellee's actions prevented or hindered the occurrence of the condition precedent. The burden of sustaining a motion for summary judgment is on the moving party. *Moeller v. Theis Realty, Inc.*, 13 Ark. App. 266, 683 S.W.2d 239 (1985). On appeal, we must view the evidence in the light most favorable to the nonmoving party. *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994). It is our task to determine whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Johnson v. Harrywell, Inc.*, 47 Ark. App. 61, 885 S.W.2d 25 (1994). Summary judgment is not proper where evidence, although in no material dispute, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.* It is not the role of summary judgment to weigh and resolve conflicting testimony but to simply decide whether such questions exist to be resolved at trial. *Jones v. Abraham*, 58 Ark. App. 17, 946 S.W.2d 711 (1997). A summary-judgment analysis does not evaluate evidence beyond the question of whether a dispute exists. *Id.*

Appellant presented evidence that all of the requirements for the transaction to close had occurred by July 19, 1996, and that Mr. and Ms. Bower were eager to close before August 1; that Williams was aware that closing could occur before August 1; and that Williams had stated to Ms. Whitehead that he would be unavailable to close the transaction until after August 1 because he would

be out of the country. In his deposition, and in his answers to appellant's requests for admission, appellee Williams admitted that he was in fact in Bentonville from July 22 through 25 and that he did not leave the country.

In its brief, appellant asserts that it was entitled to summary judgment. We note, however, that appellant did not move for summary judgment but simply requested such relief in the conclusion to its supplemental response to appellees' motion for summary judgment. Consequently, even if the trial court had applied the correct principle of law, and if appellant had properly moved for summary judgment, we could not agree that summary judgment was warranted. In his deposition, appellee Williams testified that he was ready, willing, and able to close and would have closed the transaction before August 1 if he had been contacted. He also stated that, although he was in Bentonville on July 22 through 25, he was not aware until the afternoon of the 25th that the Bowers wanted to close the transaction as soon as possible. In our opinion, genuine issues of material fact remained for trial. Accordingly, we reverse the circuit judge's entry of summary judgment for appellees and remand this case for trial.

Reversed and remanded.

ROBBINS, C.J., and ROAF, J., agree.