# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-2693

———————

Lewis D. Yarborough; Robert L. Williamson,

        Appellants,

v.

DeVilbiss Air Power, Inc.,

        Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Western
\*  District of Arkansas.
\*
\*
\*

———————

Submitted:  January 16, 2003

Filed:  March 5, 2003

———————

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and WEBBER,[1] District Judge.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This is an action by Lewis Yarborough and Robert Williamson to recover on various claims related to their sale of the Ex-Cell Manufacturing Company to

———————

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

DeVilbiss Air Power, Inc.  The plaintiffs appeal from the district court's[2] order granting summary judgment on their claims for actual fraud, constructive fraud, and breach of an implied covenant of good faith and fair dealing.  For the reasons expressed below, we affirm.

I.

We inquire first into the propriety of summary judgment on the claims for actual and constructive fraud.  The elements of a cause of action for actual fraud under Arkansas law, which governs the instant dispute, are a false representation (usually of a material fact), knowledge or belief by the defendant that the representation is false, intent to induce the plaintiff's reliance, justifiable reliance by the plaintiff, and resulting damage to the plaintiff.  *See, e.g.*, *Country Corner Food & Drug, Inc. v. First State Bank & Trust Co. of Conway, Ark.*, 332 Ark. 645, 652, 966 S.W.2d 894, 897 (1998).  A claim for constructive fraud, which lies when there is a confidential relationship between the parties, requires proof of all of the elements of actual fraud except scienter.  *See, e.g.*, *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1188 (8th Cir. 1996); *SEECO, Inc. v. Hales*, 341 Ark. 673, 698, 22 S.W.3d 157, 172-73 (2000).

We review the district court's grant of summary judgment *de novo*.  *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 891 (8th Cir.2000).  Summary judgment is appropriate if, after viewing the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact.  *See Coonts v. Potts*, 316 F.3d 745, 749 (8th Cir. 2003); Fed. R. Civ. P. 56(c).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *National Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999).

---

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

In early December 1995, counsel for DeVilbiss and counsel for Mr. Yarborough and Mr. Williamson drafted an agreement for DeVilbiss to purchase Ex-Cell. As relevant here, the agreement explicitly provided for yearly "earn-out payments" by DeVilbiss to the plaintiffs, the amount of which was to be calculated by multiplying the "earn-out factor" (a designated percentage that varied by year) by the dollar amount of "net sales" of certain designated products to certain specified customers in excess of $85 million.

Before the parties closed the sale, one of DeVilbiss's competitors approached Mr. Yarborough and Mr. Williamson and intimated that it would pay more for Ex-Cell than the amount that DeVilbiss had agreed to pay. The plaintiffs brought this fact to the attention of Bill Allen, who was president of DeVilbiss at the time. Mr. Allen then altered the written agreement to lower the relevant sales threshold from $85 million to $65 million, thus providing for earn-out payments when the designated net sales were in excess of $65 million. Mr. Allen chose $65 million as the relevant threshold because, using an earn-out factor of five percent (which the agreement specified for calender year 1996), the new threshold would provide the plaintiffs with an additional $1 million in 1996, since relevant sales for 1996 were expected to be in excess of $85 million. Soon thereafter, the parties signed the agreement and the sale was consummated.

The plaintiffs, however, contend that additional promises were made. They maintain that, before Mr. Allen had the written agreement altered to lower the sales threshold, Mr. Allen orally guaranteed that DeVilbiss would provide "earn-out payments" of $1 million per year for 1996, 1997, and 1998, regardless of the actual amount of the relevant sales. In his deposition, Mr. Allen admitted that he agreed to lower the sales threshold in a way that was expected to yield an additional $1 million, but denied that he guaranteed that earn-out payments of that amount would actually be forthcoming.

In 1996 and 1997, relevant net sales exceeded $85 million and therefore earn-out payments exceeded $1 million. In 1998, however, those sales fell short of $85 million, and DeVilbiss made an earn-out payment of less than $1 million. Mr. Yarborough and Mr. Williamson filed suit, claiming that DeVilbiss fraudulently induced the sale of the company to DeVilbiss through Mr. Allen's false guarantees that they would receive earn-out payments of $ 1 million in 1996, 1997, and 1998 regardless of the amount of sales. The district court held that the plaintiffs' actual and constructive fraud claims failed because, among other things, any reliance on the alleged oral guarantee was not reasonable as a matter of law. We agree.

When a plaintiff claims fraud in the procurement of a contract, Arkansas courts frequently submit the issue of justifiable reliance to the jury. *See, e.g.*, *Tyson Foods, Inc. v. Davis*, 347 Ark. 568, 583-84, 66 S.W.3d 568, 579-80 (2002). There is, however, no wooden rule that the matter of justifiable reliance *must* go to a jury. *See, e.g.*, *Woodend v. Southend Racing Corp.,* 337 Ark. 380, 385, 989 S.W.2d. 505, 508 (1999). As we have previously recognized, the reasonableness of a reliance on an oral representation under Arkansas law is highly dependent on the specific circumstances leading up to the relevant subsequent undertaking. *See, e.g.*, *Union Nat'l Bank of Little Rock v. Farmers Bank*, 786 F.2d 881, 887 (8th Cir. 1986).

In the instant case, all the individuals involved were sophisticated businessmen represented by experienced counsel, and, moreover, all of the alleged oral representations concerned matters that were explicitly addressed in the subsequent alteration of the contract. In these circumstances, we believe that it would be unreasonable to rely on an oral guarantee when that guarantee was quite obviously not included in the subsequent written draft of the contract. We thus do not believe that any reasonable jury could find that the plaintiffs' reliance was justifiable. *Cf. Crowell v. Campbell Soup Co.*, 264 F.3d 756, 762-64 (8th Cir. 2001); *Martin v. American Fam. Mut. Ins. Co.*, 157 F.3d 580, 581-82 (8th Cir. 1998) (per curiam);

*Plymouth Foam Products, Inc. v. City of Becker, Minn.*, 120 F.3d 153, 157 (8th Cir. 1997); *Davidson v. Wilson*, 973 F.2d 1391, 1401 (8th Cir. 1992).

The facts in *Tyson*, and in other Arkansas cases permitting the justifiable reliance issue to go to the jury, differ significantly from the ones in the instant case. In *Tyson*, for instance, the plaintiff was a farmer, not an experienced businessman represented by counsel, whereas Tyson was a large, well-established corporation. *See Tyson*, 66 S.W.3d at 573. More significantly, a prior draft of the contract in *Tyson* was not explicitly altered after the alleged oral misrepresentation. (The contract in *Tyson* was a standard year-to-year contract that Tyson used with "everybody [they] deal[t] with," something of which the farmer was perfectly aware and never questioned; the alleged oral misrepresentation concerned how often Tyson intended to renew the contract. *See id.*) We thus do not believe that *Tyson*, or any other case that the plaintiffs point to, demonstrates that summary judgment is inappropriate in the instant case.

Contrary to Mr. Yarborough and Mr. Williamson's assertions, we do not believe that granting summary judgment here would mean an end to claims for fraud in the procurement of a contract. Most cases recognizing a claim for fraud in the procurement do not involve such experienced plaintiffs, representation by competent counsel in the transaction, or changes to a written contract subsequent to an alleged oral misrepresentation, and we believe that there is a good reason for that.

II.

We ask next whether the district court properly granted summary judgment on the claim for breach of an implied covenant of good faith and fair dealing. As we have already said, the earn-out payment was based only on certain sales to certain specified customers. In 1998, DeVilbiss discontinued doing business with Wal-Mart (which was a specified customer) and transferred that portion of its business to Sears (which was not a specified customer), thus leading to a decrease in the earn-out

payment for 1998. The contract explicitly provides that DeVilbiss "has the right, in its sole discretion, to determine the terms and conditions of any and all [relevant sales], *including the decision to make or not make any such sales*." (Emphasis added).

Mr. Yarborough and Mr. Williamson contend that the contract's implied covenant of good faith and fair dealing limits DeVilbiss's discretion and permits it to make or not make sales only in good faith. Asserting that the only reason for discontinuing sales to Wal-Mart was to decrease the amount of the earn-out payment in order to increase the bonus paid to company officers, they contend that this switch of customers violated DeVilbiss's implied contractual duty of good faith and fair dealing.

Under Arkansas law, every contract contains an implied covenant of good faith and fair dealing. *See TCBY Sys., Inc. v. RSP Co., Inc.*, 33 F.3d 925, 928-29 (8th Cir. 1994); *see also Richard Short Oil Co. v. Texaco, Inc.*, 799 F.2d 415, 421-22 (8th Cir. 1986); *Cantrell-Waind & Assoc. v. Guillaume Motorsports, Inc.*, 62 Ark. App. 66, 71-72, 968 S.W.2d 72, 75 (1998). As is the case with the contract's express terms, the implied covenant is part of the contract and creates contractual obligations that are actionable. *See, e.g.*, *Cantrell-Waind*, 62 Ark. App. at 72, 968 S.W.2d at 74-75.

We nevertheless do not believe that an action lies in the present case. The purpose of an implied covenant is to effectuate the parties' intentions. *Cf. Countrywide Serv. Corp. v. Sia Ins. Co.*, 235 F.3d 390, 393 (8th Cir. 2000) (describing Missouri law); *Taylor Equip., Inc. v. John Deere Co.*, 98 F.3d 1028, 1032-33 (8th Cir. 1996) (South Dakota), *cert. denied*, 520 U.S. 1197 (1997). Where, as here, a party has expressly reserved the absolute right "to make or not make any such sales," it would contravene the parties' intentions to imply a covenant that creates the obligation that the plaintiffs argue for. That is to say, the implied covenant of good faith and fair dealing in the contract at issue may have created many obligations in addition to the contract's express terms, but restrictions on what or to

whom DeVilbiss might sell simply cannot have been one of them. *Cf. Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785, 791 (8th Cir. 1996); *Ripplemeyer v. National Grape Coop. Ass'n*, 807 F. Supp. 1439, 1451-52 (W.D. Ark. 1992).

We recognize that under Arkansas law there are circumstances in which the implied duty of good faith and fair dealing may create obligations that operate to constrain actions that are inherently in a party's control. In *Cantrell-Waind*, for instance, the court held that there was an implied covenant that a seller could not delay the date of a real estate closing beyond the time that it actually was willing and able to close, simply for the purpose of denying its agent a commission. *See Cantrell-Waind*, 62 Ark. App. at 71-72, 968 S.W.2d at 74. In that case, however, there was no provision in the contract expressly creating an uncontrolled discretion in the seller to act in the manner that he had acted.

When an action complained of "could not have been contemplated at the time of [the contract's] drafting," *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990), courts will frequently imply such obligations as are necessary to carry out the parties' contractual intent. But we believe that in no situation can the implied covenant of good faith and fair dealing limit the way in which a party exercises its discretion when the aggrieved party has specifically disavowed any limitations on that discretion, and the exercise of that discretion (and its consequences) are easily foreseeable. We do not think that the Arkansas Supreme Court would hold that the covenant of good faith and fair dealing creates an implied obligation where the parties have unmistakably expressed their respective rights. *Cf. Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 335-36, 506 N.E.2d 919, 922 (1987). "Where parties have addressed an issue in the contract, 'no occasion to divine their intent or supply implied terms arises.' " *Taylor Equip.*, 98 F.3d at 1032 (quoting *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 175 n.13 (8th Cir. 1987)); *cf. Vigoro Indus.*, 82 F.3d at 791.

Here, DeVilbiss expressly and unambiguously contracted for absolute power over its ability to make sales in order, we think, to foreclose exactly the kind of claim that the plaintiffs press in this case. DeVilbiss deserves the benefit of its bargain. We affirm the district court's grant of summary judgment on the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing.

## III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.