# M.S. MAHURIN *v.* OAKLAWN JOCKEY CLUB

89-79                                            771 S.W.2d 19

Supreme Court of Arkansas
Opinion delivered May 22, 1989

14

*J. Sky Tapp*, for appellant.

*Friday, Eldredge & Clark*, by: *James M. Simpson* and *Hank E. Jackson*, for appellee.

DAVID NEWBERN, Justice. This appeal is from a summary judgment which held that the appellant, M.S. Mahurin, was barred by a statutory deadline from collecting money he had won on a pari-mutuel bet placed with the appellee, Oaklawn Jockey Club, the holder of a regulated horse racing franchise. Mahurin argues he was not given notice by Oaklawn of Ark. Code Ann. § 23-110-406 (1987) which provides that a ticket not redeemed on or before the 180th day after the last day of a racing meet is void, and thus the statute does not apply. He also contends the statute deprives him of his property without due process of law and that it violates the Arkansas Constitution's prohibitions against laws which impair the obligation of contract and against special legislation. We agree with Oaklawn's arguments that Mahurin was charged with notice of the statute. We also hold that a statute which may affect contractual obligations does not violate the ban against laws impairing contracts if the statute precedes the contract. Nor do we find this statute to be a violation of the prohibition against special or local legislation because we find a rational basis for the limitation period and for the fact that it is shorter than the limitation periods in other statutes. Therefore, the judgment is affirmed.

Section 23-110-406 is a combination escheat and limitation statute. It provides that the franchise holder is to retain one-third of the proceeds of the unredeemed ticket, one-third is to be distributed to the state treasurer, and one-third is to be distributed to the county treasurer of the county where the racing franchise is located.

Mr. Mahurin purchased 128 separate "classix" tickets on March 31, 1987. To win in the classix betting pool, the ticket

holder must select all the winning horses in races three through eight. Mahurin claims he held a winning ticket which, with consolation winnings added, had a redemption value of $23,379.20. He sent a memorandum, dated November 5, 1987, to Oaklawn stating he held the winning ticket and asking "when the ticket will revert to the State of Arkansas," and stating he hoped to cash the ticket in 1988. He asked for an opinion "on the cashing of such a ticket in a later year."

In an affidavit attached to Oaklawn's motion for summary judgment, Eric Jackson, Oaklawn's general manager, stated the proceeds remaining from the 1987 racing meet had been distributed according to law on October 28, 1987, and the accounts of the 1987 meet had been closed.

## 1. Lack of notice

Mr. Mahurin's first point is that the 180 day limitation was not stated on the ticket which constituted his contract with Oaklawn and thus the statute "has no bearing on the actual contract reached between these parties." He cites no authority whatever for this point. Nor do we find convincing his argument that the terms of the statute, which purports to apply to pari-mutuel betting, do not apply because Oaklawn did not inform Mahurin of it other than "intermittently" in a separate racing program which he would have been required to purchase in addition to his ticket. When carried to its logical conclusion this argument would require that all laws affecting contracts be stated in the contracts or that notice of all such laws otherwise be supplied to a contracting party.

Oaklawn does not concede that the relationship between these parties is governed by the law of contracts. It contends all the rights and obligations of the relationship are statutory. We need not decide that question. Even if the law of contracts governs, the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract. *McArthur* v. *Smallwood*, 225 Ark. 328, 281 S.W.2d 428 (1955); *Petty* v. *Missouri & Arkansas Ry. Co.*, 205 Ark. 990, 167 S.W.2d 895, *cert. denied*, 320 U.S. 738 (1943).

## 2. Impairment of contract

Mr. Mahurin contends § 23-110-406 violates Ark. Const. art. 2, § 17, because it is a law which impairs the obligation of contract. The provision of § 17 is modeled on U.S. Const. art. 1, § 10, the first paragraph of which prevents the states from passing any law impairing the obligation of contracts. The Supreme Court has held that this section applies only to legislation passed subsequent to the contract alleged to have been impaired. *Munday* v. *Wisconsin Trust Co.*, 252 U.S. 499 (1920).

■ Section 23-110-406 was passed in 1965. We agree with the position taken by the Supreme Court with respect to the language of the United States Constitution which is identical to the language of the Arkansas Constitution upon which Mahurin relies. It prevents only the passage of statutes which would have the effect of impairing obligations previously entered.

## 3. Due process

Mr. Mahurin argues his winnings were taken without notice or a hearing, citing U.S. Const., amendments 5 and 14, and Ark. Const. art. 2, § 22. He also cites cases containing the familiar language assuring that a citizen be given notice and a hearing prior to any governmental taking or impairment of his or her property. *E.g.*, *Davis* v. *Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972).

There has been no taking of property here. Rather, Mahurin has been precluded from obtaining property by the operation of § 22-101-406. While it is clear he would have been entitled to notice and a hearing had he received his winnings and had there been an adjudication that he was not entitled to them, there is no such requirement when a law operates to prevent him from acquiring them. As Mr. Justice Holmes wrote in *Bi-Metellic Co.* v. *Colorado*, 239 U.S. 441 (1915):

> General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. [239 U.S. at 445]

The difference between legislative action, with respect to which a citizen has no personal right to notice and a hearing, and adjudicatory governmental action, where those personal rights must be protected, is spelled out by the California Supreme Court in *Horn* v. *County of Ventura*, 156 Cal. Rptr. 718, 596 P.2d 1124 (1979).

█ The effect of the statute in this case was to void a claim after a period of time had passed. We agree with Oaklawn that the preclusion aspect of the statute is, or is the same as, a statute of limitation, and its effect is not adjudicatory but legislative.

## 4. Special legislation

The argument made by Mr. Mahurin here is that the 180-day escheatment statute constitutes local or special legislation. Arkansas Const. art. 5, § 25, and amend. 14 prohibit passage by the general assembly of any local or special act. Mahurin contends that the act is special or local legislation because it permits Oaklawn to retain one-third of the escheated money. He also contends, "[e]very other Arkansas statute adheres to either a one, two, three or five year limitation." His position is that no argument can be made that the limitation should be so short, and that Oaklawn is favored because a horse racing franchise operator may retain one-third of the escheated monies whereas the statute providing the 180-day escheatment period for a dog racing franchise requires that all the money be distributed to public entities.

██ In *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), this court held that legislation would not be regarded as "special" unless it established a separate class on an arbitrary basis. Oaklawn's argument on this point is that there is good reason to differentiate between escheatment of funds which would be paid to a winning racing ticket and escheatment of, for example, the property of a person with no known heirs. The reason is that the holder of a winning ticket knows or can know on the day of the race whether the ticket is a winner or not. There is no need for court proceedings to determine, for example, whether property is abandoned or there are heirs to whom the property should be distributed. We agree there is a rational basis for the distinction between this short limitation period and the longer ones with which Mr. Mahurin compares it.

■ As to the point that Oaklawn benefits from the escheatment and the Southland dog track does not benefit from the similar statute regarding escheatment of the unclaimed winnings there, we need only point out that Mahurin lacks standing to raise the point. Whether the escheatment goes to the government altogether or is divided as provided in § 23-110-406 is irrelevant to Mahurin's claim. As we wrote in *Wineman* v. *Brewer*, 280 Ark. 527, 660 S.W.2d 655 (1983), "[a] party may not obtain a decision on the validity of a statute on the ground that it impairs the rights of others." To question the statute on the basis of the disparity between it and the statute applying to the dog track, Mahurin must show that disparity had an impact on him, *Montgomery* v. *State*, 277 Ark. 95, 640 S.W.2d 108 (1982), and he cannot do so.

Affirmed.