# Daniel J. WOODEND *v.* SOUTHLAND RACING CORPORATION

99-63                                    989 S.W.2d 505

Supreme Court of Arkansas
Opinion delivered May 6, 1999

*Clifford M. Cole*, for appellant.

*Wright, Lindsey & Jennings*, by: *John G. Lile* and *Jane M. Faulkner*, for appellee.

TOM GLAZE, Justice. Appellant Daniel J. Woodend has been a patron of appellee Southland Racing Corporation for nineteen years. He is an experienced bettor who, by his own admission, has gambled around a half-million dollars at Southland over the past ten years. On September 27, 1997, Woodend placed a pari-mutuel "twin-trifecta" wager. A "twin-trifecta" is a bet where the bettor selects three dogs to finish first, second, and third in exact order in the fourth race. If successful, the bettor then receives an "exchange ticket" or free bet in the sixth race; to win, he must again select three dogs to finish first, second, and third in exact order. If the bettor picks the three dogs in exact order in race six, the bettor wins the Twin-Tri carryover jackpot. If no bettor successfully chooses the foregoing exact winning combinations, a consolation payoff may still be won under the Arkansas Racing Commission's Rule 3158(P) which reads as follows:

> In the event there is no Twin-Tri exchange ticket accurately selecting the officially declared first three finishers of the second

Twin-Tri race, in exact order, payoffs shall be made in the following *order of priority*: ·

1. The first and second finishers in exact order, for example 1-2-ALL[1]

2. The first and third finishers in exact order, for example 1-ALL-3

3. The second and third finishers in exact order, for example, ALL-2-3

4. The winner to win, for example 1-ALL-ALL. (Emphasis added.)

In the instant case, Woodend and some other bettors picked the winning three dogs in exact order in the fourth race, but failed to choose the exact winning combination in race six. In race six, Woodend picked dogs 3 to win, 8 to place, and 6 to show. Dog 3 won, but dogs 4 and 2 placed and showed. Under Rule 3158(P) item 4, Woodend could have won the consolation payoff, but only if no bettors had successful combinations under the priority combinations set out above in items 1, 2, or 3 of the Rule. Unfortunately for Woodend, two other bettors picked dogs 4 and 2 as the second and third finishers in the second half of the "twin trifecta," so those two bettors were declared winners of the consolation payoff under item 3 of the Rule. Each of those two bettors received the amount of $8,557.10.

Woodend sued Southland, claiming he held the winning ticket for the consolation payoff because the official racing program contained language regarding the Twin-Tri that differed from the language in Rule 3158(P). He contends his Twin-Tri ticket was the winning one as described in the official program. The program language on which Woodend relies reads as follows:

MANDATORY TRI-SUPER, TWIN-TRI and GROWING TRI-SUPER PAYOUTS

The MANDATORY TWIN-TRI is designated for pay out EVERY SATURDAY Evening. The MANDATORY TRI-

---

[1] "ALL" is a term of art meaning any entrant in the race. Thus, it is the equivalent of a "wild card."

SUPER is designated for pay out EVERY THURSDAY Evening. In the event that the 2nd Half of either of these bets is not hit EXACTLY on the designated pay out day, payoffs shall be made on tickets selecting in the following order of priority: A. The first three greyhounds in exact order, for example 1-2-3-ALL B. The first two greyhounds, in exact order, for example 1-2-ALL-ALL C. The winner to win, for example 1-ALL-ALL-ALL.

At trial, Woodend argued that the above language was contractual and controlled what the winning selection or bet should be in *either* the Twin-Tri or Tri-Super when the consolation payoff was at stake. Southland countered, stating the express language in the program described only the Tri-Super consolation payoff because the wording in the program required the bettor to select four dogs, not three as required in the Twin-Tri. The trial court held in Southland's favor, but in doing so, it did not adopt Southland's argument. Instead, the court granted Southland summary judgment, finding that the wager described in the official program was not authorized by the Arkansas Racing Commission, was illegal and void as against public policy, and was unenforceable.

On appeal, Woodend raises the following three points for reversal: (1) his twin-trifecta wager and alleged winning ticket constituted a contract between him and Southland, and a "valid" issue of fact exists as to whether he is entitled to recover on the contract; (2) Southland, by its language contained and published in the official program set out above, fraudulently misrepresented the payoff directions for the twin-trifecta wager; and (3) Southland violated Woodend's due-process rights because it did not communicate the Twin-Tri rules to the public as required by the Commission's regulations, and Southland also failed to designate those rules correctly in the official program. He also argues, without citation of authority and virtually no argument, that his due-process rights are denied because the public has no recourse against race tracks for taking illegal wagers.

Our court accepted jurisdiction of this appeal because it presents an issue of first impression and an issue needing clarification or development of the law. Ark. Sup. Ct. R. 1-2(b).

First, we must decline to reach Woodend's due-process arguments because they were not presented to the trial court below. *See Warnock v. Warnock*, 336 Ark. 506, 988 S.W.2d 7 (1999). Thus, we address only Woodend's contract and fraud claims, which we hold are meritless.

We first consider the contract argument. Under Ark. Code Ann. § 23-111-204 (Repl. 1992), the Racing Commission has the full, complete, and sole power and authority to promulgate rules, regulations, and orders, and to prescribe conditions under which greyhound racing shall be conducted by a franchise holder. As previously discussed, the Commission adopted Rule 3158(P), and under the terms of that Rule, we observe that Woodend lost because two other bettors chose dogs that finished as described in priority item 3 — which immediately appears before item 4, Woodend's dog selections.

In sum, the Commission's rules governing twin-trifecta wagering provide that each purchaser making such a wager agrees to be bound by the rules and regulations of the Commission and the laws of Arkansas pertaining to parimutuel wagering. It is also well settled that the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract. *Mahurin v. Oaklawn Jockey Club*, 299 Ark. 13, 771 S.W.2d 19 (1989). Here, even if Woodend is correct in claiming his wager constituted a contract, it is of no import because he held no winning ticket under any interpretation of Arkansas' statutes, regulations, or rules. Woodend even conceded at trial that he understood the Commission sets the rules on how the twin-trifecta wager is to payout, and under Rule 3158(P), he did not win the bet.

Woodend continues his argument by urging that Southland committed fraud when it misstated in its official program the Twin-Tri payoff instructions as they appeared in Rule 3158(P). Stated differently, he asserts that Southland's misstatement in the program, attributing the same payoff directions for either the Twin-Tri or Tri-Super bets, constituted a fraud and deception on the public and entitled Woodend to punitive damages. This argument, too, must fail.

To plead a cause of action for fraud, a plaintiff must prove the existence of the following elements: (1) a false representation, usually of a material fact, (2) knowledge or belief by the defendant that the representation is false, (3) intent to induce reliance on the part of the plaintiff, (4) justifiable reliance by the plaintiff, and (5) resulting damage to the plaintiff. *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998). Moreover, to be well pleaded, fraud must be specifically alleged and the complaint must state something more than mere conclusions and must clearly set forth the facts relied upon as constituting fraud. *Id.* In the instant case, Woodend alleged in his complaint what he purported to be a misrepresentation by Southland in its official program, but he never factually alleged that Southland knew or believed it had made a misrepresentation of fact, that Southland intended Woodend to rely on such misstatement, or that Woodend justifiably relied on any misrepresentation. For these reasons, Woodend's fraud claim must fail.

Woodend's claim of fraud must also fail because, at the least, his proof fell short of showing any justifiable reliance on his part. Once again, Woodend knew Southland was required to make the payoffs in accordance with the Commission's rules, and he had won a Twin-Tri wager under the consolation rules just a year prior to the one in issue here. Furthermore, Woodend admitted he only glanced through the official program and did not read and study it. Nor did Woodend show he was damaged by any misrepresentation since he concedes he was not entitled to recover under the Commission regulations or Rule 3158(P), which established the winning combinations for Twin-Tri wagers.

In conclusion, we repeat that the trial court granted Southland's summary judgment based on the fact that the payoff in the Twin-Tri bet here was unauthorized and an illegal wager unenforceable under Ark. Code Ann. § 16-118-103 (1987). Our holding, of course, is based on Woodend's failure to show any contractual or misrepresentation claim, and in so holding, we further conclude Rule 3158(P) is legal and controlling in this case. Consequently, we affirm the result reached by the trial court, but solely for the reasons stated above.