The Honorable Jay Bradford State Representative Post Office Box 8367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion regarding a question arising from the following reported facts:
 In a letter dated 12/29/04, the outgoing mayor of Pine Bluff granted the outgoing city clerk 47 sick leave days and 60 vacation days beginning 1/1/05. The former city clerk was subsequently hired as an employee of the city's street department on 1/3/05. Prior to becoming city clerk, this city clerk worked for 14 years as a secretary in the police department. Upon deciding to retire as city clerk, she requested that she be paid for any vacation or sick leave time she had accumulated while an employee of the police department. No records appear to exist for her period of hire from 1970-1976. Maximum carryover was 30 days for vacation and 45 days of sick leave, effective January 1, 1977. No record exists for what the maximums were, if any, before this time. She terminated her employment with the police department at the end of 1984 and after being elected city clerk. Effective January 1, 1984, non-uniformed employees were allowed to carryover a maximum of 45 days of vacation and to accumulate up to 90 days of sick leave. The employee handbook, adopted by ordinance, says an employee will be paid for accumulated vacation upon resignation, retirement, or at the end of employment. A city ordinance says that upon retirement or death, any non-uniformed employee shall be paid for such sick leave at their regular rate of pay. Records at the end of her employment with the police department reflect that the employee was in a deficit status on vacation, but had a small amount of sick leave. There is no city ordinance specifically granting the mayor authority to settle claims against the city.
Against this backdrop, you have posed the following questions:
 1. Does a mayor of a city of the first class have the authority to settle a claim against the city without approval of the city council or any supporting documentation?
 2. If the outgoing mayor lacked the authority to grant vacation and sick leave, does the new mayor have any obligation to honor the letter announcing the grant of leave time?
Based upon your factual recitation, I gather that the outgoing clerk began her service as a secretary for the police department in 1970, serving 14 years in that position until her election as clerk in 1984. Your report that the outgoing mayor granted the outgoing clerk sick leave days and vacation days "beginning 1/1/05" suggests that no redemption of this leave by cash payment occurred. I am bolstered in this impression by your second question, which suggests that no payment has been made to the outgoing clerk either before or after the outgoing mayor's departure. However, you also report that the outgoing city clerk "requested that she be paid" for leave time accumulated during her employment by the police department. For purposes of my analysis, I will assume that the outgoing mayor did not grant this request, instead granting her additional leave time during what was apparently her then anticipated new employment with the city's street department.
RESPONSE
Given the general scope of your first question, I am unable to give a specific answer other than to note that a mayor is statutorily authorized to settle only monetary claims against the city without council approval, and only then up to an amount authorized by the council. A.C.A. § 14-58-305. It is unclear from the facts you have recited what basis exists for the outgoing clerk's claim of entitlement to vacation and sick leave accrued during her tenure as a secretary for the police department. Accordingly, I am unable to opine whether she was in fact entitled either to a payment redeeming this time, as she apparently requested, or to a grant of leave time in her new position with the street department, as the outgoing mayor apparently granted her. However, I do not believe that a mayor may settle a claim without council approval by granting additional sick leave or vacation time, which you report occurred in this case. A finder of fact would likely characterize such additional leave time as compensation that only the city council may award. See Ark. Const. amend. 56, § 4; A.C.A. § 14-43-409; and Ark. Op. Att'y Gen. No. 96-366 (addressing the award of leave time to city officers); see also A.C.A. § 14-43-601 (including leave time of city employees among the "state affairs" that the city council, as opposed to the mayor, might regulate in accordance with state law). With respect to your second question, I believe the incoming mayor should review with the city attorney all of the circumstances attending the outgoing mayor's issuance of the letter and determine whether the award of additional leave time, if approved by the council, would be warranted. Among the pertinent inquiries will be whether the "settlement" letter constitutes a contract supported by adequate consideration. If the city attorney provisionally answers this question in the affirmative, he may recommend that the council ratify the outgoing mayor's action. I do not believe it would be appropriate for the incoming mayor to honor the terms of the letter simply because the outgoing mayor wrote it.
Question 1: Does a mayor of a city of the first class have the authorityto settle a claim against the city without approval of the city councilor any supporting documentation?
In my opinion, your question is stated too broadly to allow of a general answer. A mayor might have such authority in certain circumstances and not in others. However, if, as you have suggested, the mayor's settlement in this particular instance took the form of a grant of additional leave time in the outgoing clerk's new position with the city, I believe the grant will be valid only if endorsed by the city council, and only then if the facts support the outgoing clerk's claim to the additional leave time.
Your question implicates the provisions of Ark. Const. amend. 56, § 4, which provides:
 Compensation of municipal officers and officials shall be fixed by the governing body of the municipality, not to exceed limits which may be established by law.
Various statutes likewise bear on your question. Section 14-58-305
(Repl. 1998) of the Code provides:
 (a) In a city of the first class, the mayor or his duly authorized representative may approve for payment out of funds previously appropriated for that purpose, or disapprove, any bills, debts, or liabilities asserted as claims against the city.
 (b) The municipal governing body shall, by ordinance, establish in that connection a maximum amount, and the payment or disapproval of such bills, debts, or liabilities exceeding that amount shall require the confirmation of the governing body.
Subsection 14-43-504(a) (Repl. 1998) designates the mayor the "chief executive officer" of the city. Among the mayor's duties is to submit an annual budget for the city council's approval. A.C.A. § 14-58-201 (Repl. 1998). Subsection 14-58-203(a) (Repl. 1998) provides:
 (a) The approval by the municipal governing body of the budget under this subchapter shall, for the purposes of the budget from time to time amount to an appropriation of funds which are lawfully applicable to the items therein contained.
In addition, A.C.A. § 14-55-204 (Repl. 1998) provides:
 All bylaws, ordinances, resolutions, or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the aldermen of any municipal corporation.
Finally, A.C.A. § 14-43-409 (Repl. 1998) provides:
 All officers provided for in this subtitle, and by ordinance of any city under this subtitle, shall receive such salary as the council of any city may designate, and in no instance shall they receive an additional compensation by way of fees, fines, or perquisites. All fees, fines, or perquisites shall be paid into the city treasury.
With respect to the general question of authorizing expenditures, one of my predecessors aptly summarized the law as follows:
 [E]xpenditures by cities must, in the first instance, be appropriated by the city council. The council also has the authority to determine a maximum amount above which they must approve the expenditure, even if previously appropriated. These statutes indicate that the city council has primary and ultimate authority to approve or disapprove expenditures. But they also indicate that some expenditures of appropriated funds can be made without the city council's direct approval.
Ark. Op. Att'y Gen. No. 99-268. Specifically with respect to the "compensation" of officers, Amendment 56 and A.C.A. § 14-43-409 expressly provide that the city council will make this determination. As one of my predecessors noted: "[C]ompensation would include the awarding of annual or sick leave." Ark. Op. Att'y Gen. No. 96-366.
Before discussing the possible application of the above principles under the circumstances described in your request, I must stress that I am neither equipped nor authorized to act as a finder of fact. The city attorney is uniquely situated to assess all of the facts and to determine whether the outgoing clerk was actually entitled to an award of vacation and sick leave time. I will note, however, what I consider unresolved factual issues based upon your recital of background information. You report that as of 1984, when the former city clerk left her employment with the police department, an employee could carry over up to 45 days of vacation leave time and 90 days of sick leave time. However, it is unclear whether these provisions applied only to authorize the carryover of leave time from one fiscal year to the next, or whether they would also apply to authorize the carryover of leave time when an employee moved from one position with the city to another. Answering this question would obviously bear on the question of whether the outgoing clerk might be entitled to leave credit for past service in another position. It is further unclear whether the vacation and sick leave time the outgoing mayor granted the outgoing clerk included any time accrued during her tenure as city clerk. You further report that the record at the end of her employment with the police department showed a deficit in accumulated vacation time but a slight accumulation of sick time. However, the former city clerk's employment records of her service as a secretary for the police department during the period 1970-76 have reportedly disappeared, rendering it unclear how much vacation and sick leave time she might have accumulated during this period. Not being a finder of fact, I am unable to opine on the questions of (1) whether the outgoing clerk was entitled to any award of leave time or (2) if she was, whether either a carryover of that time to her new position or a cash redemption of the accrued time would be appropriate.[1] Local officials acquainted with all the available facts should make this determination.
With respect to what you suggest was the mayor's "settlement" of the current city clerk's claim, I find it significant that under the terms of A.C.A. § 14-58-305, the mayor's only settlement authority without council approval is to make payment from the "fund" established to defray, interalia, "liabilities asserted as claims against the city," and only then up to a "maximum amount" set by the council.[2] Given that a mayor has only monetary settlement authority without council approval, and further given that, by statute, only the city council has the authority to set the compensation of city officials, Amendment 56 and A.C.A. § 14-43-409, I believe that the only the city council, not the mayor, could award the city clerk compensation in the form of additional leave time. Moreover, even if, as might well be the case, the additional leave time awarded the clerk were deemed compensation for her service not as a city official covered by Amendment 56 and A.C.A. § 14-43-409, but rather as a non-uniformed employee of the police department, the city council would likewise be the appropriate entity to approve such compensation. The Code expressly includes among "state affairs" subject to the "general laws" of the state "[h]ours and vacations, holidays, and other fringe benefits of employees." A.C.A. § 14-43-601(a)(1)(G) (Repl. 1998). Subsection (a)(2) of this statute provides that a city council may legislate upon state affairs "if not in conflict with state law." The Code contains no provisions regulating the leave time of non-uniformed employees, thus leaving this field open for regulation by the city council. No provision of the Code affords the mayor control over awarding leave time. Accordingly, unless the city council has enacted an ordinance affording leave time and delegating to the mayor the power to administer and settle issues relating to leave — a condition your factual recitation provides me no basis to assume has been met — I do not believe the mayor acted within the scope of his authority in granting the former city clerk additional sick leave and vacation time without obtaining the approval of the city council.
Question 2: If the outgoing mayor lacked the authority to grant vacationand sick leave, does the new mayor have any obligation to honor theletter announcing the grant of leave time?
Given my conclusion that the outgoing mayor lacked authority to issue the letter without the approval of the city council, I do not believe the incoming mayor should honor the terms of the letter without such approval. I cannot answer the practical question of whether the new mayor, after consultation with the city attorney, should recommend that the city council ratify the outgoing mayor's action. The question of what circumstances prompted the outgoing mayor to attempt awarding the former city clerk additional leave time is intensely factual, and I am not situated to speculate whether there might be some legitimate basis for the outgoing mayor's determination that the outgoing clerk was entitled to additional compensation in the form of leave time. I can only opine that only the city council, based upon its own review of the facts, has the authority to act on any such determination. Prudence would dictate that the new mayor review all the facts with the city attorney and make a recommendation of some sort to the city council, which would clearly be authorized to ratify the outgoing mayor's action either as a settlement of a legitimately disputed claim or as an award of additional compensation.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: JD/cyh
[1] It may well be, although only a finder of fact could determine as much, that the only rights the former clerk had were contractual in nature and arose over 20 years ago. In this regard, I will note that any ordinances in effect in 1984 that bore on the current clerk's right to payment would likewise sound in contract. See Woodend v. Southland Racing Corp., 337 Ark. 380, 384, 989 S.W.2d 505 (1999) ("It is . . . well settled that the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract. Mahurin v. Oaklawn Jockey Club, 299 Ark. 13, 771 S.W.2d 19 (1989)."). Compare City of North Little Rock v. Vogelsang, 273 Ark. 390, 393, 619 S.W.2d 652
(1981) (holding that an ordinance allowing a specified accumulation of sick days would apply to an individual hired under its terms, but that a modified ordinance would apply once the accumulated sick days were used or redeemed). In light of this fact, a reviewing court might conclude that any claim to payment is now time-barred based on the statutes of limitations applicable to contracts.
[2] It does not appear to be the case that the city council has any discretion as to whether to establish such a fund. Subsection (b) of the statute directs that "[t]he municipal governing body shall, by ordinance, establish" the fund. (Emphasis added.)