The Honorable Scott Sullivan State Representative 109 Long Meadow Drive DeQueen, AR 71832-9740
Dear Representative Sullivan:
I am writing in response to your request for my opinion on the following question, which you have submitted on behalf of the DeQueen City Attorney:
 May the City Council of a city of the first class restrict the authority of the Mayor to spend funds previously appropriated by the City Council? More specifically, does A.C.A. 14-58-[3]05 contradict A.C.A. 14-58-303?
 You report that "the council is considering setting limits on the Mayor's authority to spend previously appropriated funds."
RESPONSE
I cannot definitively answer your question because I have no information regarding the nature of the restrictions the city council proposes to impose on the mayor's spending authority. The answer to both parts of your first question is further unclear because the relationship between the two statutes is itself unclear and requires legislative clarification. Section 14-58-303
of the Code (Supp. 2005) grants the mayor exclusive authority, without restriction as to cost, to make purchases and to enter into contracts on behalf of the city, subject, of course, to the condition that he may not expend funds that have not been appropriated by the city council. However, A.C.A. § 14-58-305
(Repl. 1998) provides that the mayor, without city council approval, may independently pay or dispute claims against the city only up to an amount designated by ordinance, irrespective of whether the appropriation at issue exceeds that amount. It is unclear what restrictions, if any, this statute places upon the mayor's authority independently to contract on behalf of the city. Finally, A.C.A. § 14-58-203(b) provides that the city council may revise an appropriation so long as doing so does not divert tax revenues or prejudice the rights of creditors. Accordingly, subject to the conditions set forth in A.C.A. §14-58-203(b), a city council might, as you phrase it, "restrict the authority of the Mayor to spend funds previously appropriated" by simply reappropriating the funds. However, it is unclear whether A.C.A. § 14-58-305, which limits the mayor's authority independently to pay claims against the city, limits by practical implication what A.C.A. § 14-58-303 suggests is the mayor's exclusive authority within the range of an appropriation to contract for purchases or services on behalf of the city. Legislative clarification appears warranted.
As discussed below, under appropriate circumstances, a city council might restrict the authority of a mayor to spend funds in accordance with an appropriation by reappropriating the funds pursuant to A.C.A. § 14-58-203(b). As further discussed below, it is unclear whether A.C.A. § 14-58-305 restricts a mayor's discretion to purchase or contract on behalf of the city within the limits of an appropriation. However, this statute appears to restrict the mayor's authority to spend funds by requiring city council approval of expenditures above an amount established by ordinance.
As an initial matter, I must note that the following statement of law recited in your request, while correct, is incomplete:
 . . . A.C.A. 14-58-303 gives the mayor exclusive authority to make purchases of less than $20,000.00 for all supplies, apparatus, equipment, materials, and other things.
Although this statement is true so far as it goes, it is further the case that the mayor has similar authority with respect to purchases that exceed $20,000.00 in value. Specifically, the statute provides in pertinent part:
 (a) In a city of the first class,[1] city of the second class, or incorporated town, the mayor or the mayor's duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
 (b)(1)(A) The municipal governing body of any city of the first class shall provide, by ordinance, the procedure for making all purchases which do not exceed the sum of twenty thousand dollars ($20,000).
 * * *
 (2)(A)(i) In a city of the first class, where the amount of expenditure for any purpose or contract exceeds the sum of twenty thousand dollars ($20,000), the mayor or the mayor's duly authorized representative shall invite competitive bidding thereon by legal advertisement in any local newspaper.
 (ii) Bids received pursuant to the advertisement shall be opened and read on the date set for receiving the bids in the presence of the mayor or the mayor's duly authorized representative.
 (iii) The mayor or the mayor's duly authorized representative shall have exclusive power to award the bid to the lowest responsible bidder, but may reject any and all bids received.
 (B) The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical.
A.C.A. § 14-58-303 (Supp. 2005) (emphases added). This statute is unambiguous in investing the mayor or his duly authorized delegate with the "exclusive power and responsibility" to contract and to purchase all things "requisite for public purposes" in the city.
You have asked whether the statute just quoted conflicts with A.C.A. § 14-58-305 (Repl. 1998), which provides:
 (a) In a city of the first class, the mayor or his duly authorized representative may approve for payment out of funds previously appropriated for that purpose, or disapprove, any bills, debts, or liabilities asserted as claims against the city.
 (b) The municipal governing body shall, by ordinance, establish in that connection a maximum amount, and the payment or disapproval of such bills, debts, or liabilities exceeding that amount shall require the confirmation of the governing body.
These statutes must be read in conjunction with several other statutes. Section 14-58-201 of the Code (Repl. 1998) directs the mayor annually to submit a budget to the city council. Subsection14-58-203(a) (Repl. 1998) provides that the city council's approval of a budget will "amount to an appropriation of funds which are lawfully applicable to the items therein contained." Accordingly, once the city council has appropriated funds by approving the budget, the mayor will have the authority to make expenditures in accordance with the appropriations subject to the statutory provisions recited above.
In Ark. Op. Att'y Gen. No. 2002-093, one of my predecessors aptly summarized as follows the relationship between a mayor and a city council with respect to the contracts referenced in A.C.A. § 14-58-303:
 . . . I believe that neither A.C.A. § 14-43-502[2] nor any other provision of state law empowers the city council, its designees or any other person other than the mayor or his designee to execute contracts on behalf of the city. The power to control finances through the power of appropriation does not necessarily carry with it a power to determine what contracts the city will execute. Section 14-58-303 unequivocally locates the latter power in the mayor or his designee.
However, in Ark. Op. Att'y Gen. No. 1993-332, one of my predecessors described as follows a potential restriction beyond the terms of an appropriation on the mayor's authority to contract on behalf of the city:
 The issue is complicated . . . by A.C.A. 14-58-305
(1987), which gives the mayor the authority to approve payment of bills, debts, or liabilities asserted as "claims" against the municipality. Subsection (b) of this statute states that the governing body shall, by ordinance, establish a maximum amount, and the payment of such claims exceeding that amount shall require the confirmation of the governing body. The council can require prior council approval of the payment of any "claim" exceeding this amount. It is unclear, however, how this statute relates to "purchases" made by the mayor.
The lack of clarity my predecessor referenced results from the fact that whereas A.C.A. § 14-58-303 appears to afford the mayor unfettered discretion to contract within the terms of an appropriation, regardless of the amount of the appropriation, A.C.A. § 14-58-305 restricts his authority independently to pay
claims upon the contract above a stated amount. The question arises, then, whether the city council's discretion under A.C.A. § 14-58-305 to limit the mayor's authority independently to make payments on contracts above a stated amount has the practical effect of limiting the mayor's power, possibly in derogation of A.C.A. § 14-58-303, independently to contract up to the amount of an appropriation that exceeds the independent-payment cap.
In addressing the possible tension between these two statutes, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765,68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing Statev. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State,347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis,335 Ark. 188, 979 S.W.2d 894 (1998).
In addition, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State,315 Ark. 1, 864 S.W.2d 859 (1993); City of Fort Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly.Uilkie v. State, 309 Ark. 48, 827 S.W.2d 131(1992); Love v.Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; Ward SchoolBus Mfg., Inc. v. Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977).
Moreover, a general statute normally does not apply where there is a specific statute governing a particular subject matter.Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City ofFort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session, Sargent v. Cole, 269 Ark. 121, 598 S.W.2d 749 (1980), although, in such a case, the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v. Gates,180 Ark. 96, 21 S.W.2d 406 (1929). With respect to such acts, A.C.A. § 1-2-207(b) provides:
 When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.
The presumption, then, is that two acts passed during the same session that address the same subject were actuated by the same policy and that both were intended to be given effect. SeeSutherland on Statutory Construction, § 23.17 (5th Ed., 1993); Adams v. Arthur, 969 S.W.2d 598, 333 Ark. 53 (1998);Horn v. White, 225 Ark. 540, 284 S.W.2d 122 (1955). However, the Arkansas Supreme Court has held that this rule must yield if doing so is necessary in order to effectuate legislative intent.Horn, supra. Moreover, the court has held that if two acts that are passed at the same legislative session contain conflicting clauses, the whole record of legislation will be examined to ascertain the legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment. Id.
In the present case, both statutes were initially enacted pursuant to Acts 1959, No. 28, §§ 5 and 6.[3] A strong presumption consequently applies that the statutes are compatible, merely addressing different circumstances.
In my opinion, several possible ways to reconcile the two statutes exist. The first entails reading A.C.A. § 14-58-303
broadly as empowering the mayor to commit the city to any expenditure consistent with a particular appropriation, irrespective of whether the expenditure exceeds the statutory cap on unapproved payment mandated by A.C.A. § 14-58-305. Under this interpretation, the city council's "confirmation" pursuant to A.C.A. § 14-58-305(b) of the mayor's determination to pay or disapprove "bills, debts, or liabilities" exceeding the cap set by the city council would involve a purely ministerial review to determine that the prospective payee had performed its obligations and that the proposed expenditure was consistent with an appropriation. The "confirmation" would not involve any review of the wisdom of the mayor's decision to make a purchase or to enter into a particular contract authorized by a prior appropriation. This interpretation has a certain logical force in that it avoids the possibility that a mayor might contract within the terms of an appropriation only to have the city council subsequently deny payment on the contract because it questioned the mayor's judgment in acting on the appropriation. This interpretation is further consistent with the proposition that a city council's control over a mayor's executive discretion in making purchases or contracting for services resides in the power of appropriation, which the council might exercise narrowly when appropriate by making only line-item appropriations. See Ark. Op. Att'y Gen. No. 1993-332 (opining that "there is no prohibition against the city including specific line-items in the city budget").
The second possible interpretation of the two statutes entails reading A.C.A. § 14-58-303 rather narrowly as merely declaring that the mayor alone has the authority to negotiate purchase agreements and service contracts that are otherwise permissibleunder Arkansas law, including the provision of A.C.A. §14-58-305 barring payment upon any particular purchase or contract above a certain amount without prior city council approval. Under this reading of the statute, assuming the mayor wished to make a particular purchase in excess of the cap for, say, heavy machinery — a general category that I will assume for purposes of this example had been previously budgeted and appropriated — it would behoove him to obtain the city council's approval before entering into the contract, since he would otherwise be proceeding without any assurance that the city council would eventually authorize the payment.[4] This reading of the statute might seem somewhat strained in light of the fact that A.C.A. § 14-58-305(b) refers to the approval as being of "bills, debts, or liabilities exceeding" the cap, thereby suggesting that the approval would normally occur only after the sale has been consummated or the contract performed. However, I suspect a reviewing court would conclude that approval obtained prior to the city's contracting would fulfill the statutory requirement and hence obligate the city to fulfill its contractual obligations. In short, under this reading of the statute, although the mayor alone might negotiate and execute contracts whose value exceeds the amount of the cap on payment without city council approval, the mayor would be effectively precluded from negotiating such contracts without prior approval.
Alternatively, A.C.A. § 14-58-305 might plausibly be distinguished from A.C.A. § 14-58-303 by reading the former as dealing not with uncontested contractual obligations, as does the latter, but rather with "claims" in one or both of the following senses set forth in Black's Law Dictionary (8th ed. 1999):
 Claim, n. 21. The aggregate of operative facts giving rise to a right enforceable by a court. . . . 4. An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing. . . .
Used in this sense, the term "claim" might be read as denoting an arguable obligation that might become the subject of a legal dispute, with the upshot of the statute being simply to authorize the mayor independently to settle and compromise any such unliquidated contractual obligation only in an amount up to that expressly authorized by the city council for the compromise and payment of unliquidated claims.[5] In my opinion, this reading draws support from the provisions of A.C.A. §14-58-305(a), which appears to envision the creation by ordinance of a distinct fund from which the mayor may discharge, in whole or in part, "any bills, debts, or liabilities asserted as claims against the city," subject only to the proviso that he or she cannot independently compromise any such claim in an amount that exceeds the sum authorized by the city council.
Having offered these alternative readings of the pertinent statutes in an effort to resolve what I believe is a clear tension between them, I must acknowledge that none of the proposed readings is entirely persuasive. Needless to say, the issue of precisely what spending authority a mayor may exercise is of paramount importance in the conduct of municipal affairs, and I am informed that it is a leading matter of inquiry to the Arkansas Municipal League. Under these circumstances, legislative clarification is clearly warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosures
[1] DeQueen is a city of the first class.
[2] Section 14-43-502 of the Code (Supp. 2005) sets forth the general powers of the city council.
[3] Section 14-58-305 of the Code, which deals with the payment of obligations "asserted as claims against the city," has never been amended since its enactment in 1959. Section 14-58-303, which addresses the mayor's general contracting authority has been amended five times since 1959, most recently by two separate acts in the 2005 legislative session. See Acts 1979, No. 154, § 1; 1985, No. 745, § 3; 1995, No. 812, § 1; 2001, No. 508, § 1; 2005, No. 1435, § 2; and 2005, No. 1957, § 1.
[4] It would conversely behoove the other contracting party to determine that the city council had approved the contract. Given the provisions of A.C.A. § 14-58-305, which would be incorporated into the contract as if expressly set forth therein, see Woodendv. Southland Racing Corp., 337 Ark. 380, 384, 989 S.W.2d 505
(1999); Mahurin v. Oaklawn Jockey Club, 299 Ark. 13, 15,771 S.W.2d 19 (1989), a reviewing court might well conclude that the payment terms of the contract might be trumped by the statutorily authorized ordinance obligating the city to pay in excess of a stated amount only upon the approval of the city council.
[5] The procedure for settling tort claims, as opposed to disputed contractual claims, is set forth at A.C.A. § 21-9-302
(Repl. 2004), which provides that "[e]ach county, municipal corporation, school district, special improvement district, or any other political subdivision of the state is authorized to provide for hearing and settling tort claims against it." The authority to settle tort claims thus clearly resides in the city council, not the mayor.