The Honorable Bruce Maloch State Representative 650 Columbia Road 258 Magnolia, Arkansas 71753-8599
Dear Representative Maloch:
I am writing in response to your recent request for my opinion on various questions that I will paraphrase as follows:
 1. Is it constitutionally permissible for Columbia County to enter into a 10-year contract with a private entity to provide wood-waste processing?
 2. If it is not legal or constitutional, what options does a county have if such a contract has been signed?
 3. Is such a contract voidable or void ab initio?
You have attached to your request a Wood Waste Processing Agreement, executed on June 27, 2005, between Columbia County and Crochet Equipment Co., that commits the county to pay the contractor on a monthly basis for a term of ten years a stipulated sum to process the county's wood waste. The agreement contains no opt-out provision or any condition that would absolve the county of the obligation to pay for services in any given year in which appropriations might not cover the recited expenses. You have also attached an opinion letter from the Association of Arkansas Counties that invokes Op. Att'y Gen. No. 2007-256 in support of the proposition that the contract at issue violates Ark. Const. art. 12, § 4 in that it might commit the county in any given year to expend revenues in excess of those available in that particular fiscal year. Specifically, the Association of Arkansas Counties has opined: *Page 2 
 County judges are directed to refrain from entering contracts which may conflict with this constitutional mandate; and depending on the aggregate sum of the contractual obligation a non-appropriation clause may be warranted. It is apparent that the subject contract is in violation of Article 12, § 4 of the Arkansas Constitution.
RESPONSE
As I noted in Op. Att'y Gen. No. 2007-256, any such contract would be subject to the constitutional proscription, set forth in Ark. Const. art. 12, § 4, against committing the county to make allowances in any given fiscal year in excess of available revenues or to commit the county to pay obligations incurred in one year from the next year's revenues. As interpreted by the courts over time, this constitutional provision is not entirely clear regarding whether a county would be precluded from entering a multi-year contract that would incur an aggregate payment obligation over the term of the contract that exceeds available revenues in the year the contract was made. Recent case law, however, suggests that the constitutional proscription set forth in Article 12, § 4 bars a county only from incurring contractual financial obligations in any given fiscal year in excess of available revenues forthat year. Determining whether this proscription has been violated will entail in each instance undertaking a factual inquiry of the sort that this office is neither equipped nor authorized to conduct. A related issue exists regarding whether the requirements of Article 12, § 4 would be met if a long-term services contract contains a nonappropriation clause relieving the parties of their mutual contractual obligations in the event the county's revenues in any given fiscal year exceed its monetary obligations. Recent case law suggests that the answer to this question is "yes" — i.e., that a nonappropriation clause would preclude any constitutional challenge to the contract based upon Article 12, § 4. Moreover, although no court has directly addressed the issue, it is possible that a court might read a nonappropriation clause into a contract as a matter of law, meaning that the contract would be deemed void in any fiscal year, including the year in which the contract was executed, if the amount currently due would exceed available revenues for that year. In the absence of judicial or legislative guidance, however, I cannot predict that a court would follow this course. With respect to your second and third questions, a long-term contract that fails to comply with the financial proscription set forth in Article 12, § 4 would be void ab initio, although the contractor might be entitled to a quantum meruit recovery for work actually performed. *Page 3 
 Question 1: Is it constitutionally permissible for Columbia County toenter into a 10-year contract with a private entity to providewood-waste processing?
In my opinion, the answer to this question is "yes," subject to the condition that the contract cannot obligate the county to incur financial obligations that exceed available revenues in the year the contract is made and in any subsequent fiscal year within the term of the contract.
Subsection 14-14-1102(b)(2)(C)(ii) of the Arkansas Code (Repl. 1998) provides as follows:
 The county judge shall have the authority to enter into necessary contracts or other agreements to obligate county funds and to approve expenditure of county funds appropriated therefor in the manner provided by law.
This statutory provision, which is in all respects consistent with the provisions of Ark. Const. amend. 55, § 3 setting forth the powers of the county judge, clearly empowers the county judge to contract on behalf of the county, subject initially to the constitutional restriction discussed above.
Article 12, § 4 of the Arkansas Constitution provides in pertinent part:
 The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . .
(Emphasis added.)
In Opinion No. 2007-256, I interpreted and applied this constitutional provision, as well as other applicable law regarding a county's authority to contract, as follows: *Page 4 
 To the extent that the renewal or extension of a county health care plan might obligate the county to make expenditures in any given year in excess of that year's revenues, I believe this constitutional provision would prohibit the county judge from entering into the renewal or extension. See Miller County v. Blocker, 192 Ark. 101, 103, 90 S.W.2d 218 (1936) (declaring that even expenses incurred pursuant to statutory mandate, as distinguished from a mere contract, could [not] exceed revenues of the current year without offending the Arkansas Constitution). With regard to a multi-year contract negotiated by a county judge, this potential constitutional infirmity might be avoided by the inclusion of a non-appropriation clause that precluded expenditures in excess of annual appropriations.
Article 12, § 4 is, to state the matter discreetly, less than a model of clarity. Nevertheless, I do not read this provision as restricting a county from entering into a contract that might over the entirety of its term require the county to pay more than its available revenues in the year the contract was executed. Rather, I read the opening highlighted passage in the excerpt above as doing no more than proscribing a county from entering into any contract or making any allowance that would require the county to pay more in the first year than the county has available. The closing highlighted passage similarly precludes a county from making any allowance that exceeds available revenues in the fiscal year in which the allowance is made. Allowances are made on an annual basis subject to a strict review to ensure that funds are indeed available to discharge the county's contractual obligations in that fiscal year. See Op. Att'y Gen.Op. No. 2007-009 (reviewing in detail the statutory procedure for making county expenditures from the point of appropriation until the actual tender of payment). I believe the phrase "allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said . . . allowance is made" should be read independently as authorizing a county to enter into a multi-year contract so long as its contractual obligation in any given year does not exceed available revenues for that year. In accordance with this restriction, I agree with the Association of Arkansas Counties' suggestion that, as a matter of practice, counties would be well advised to include a nonappropriation clause in any multi-year contract.[1] *Page 5 
Your question is virtually identical to the following question addressed by my immediate predecessor in Op. Att'y Gen. No. 2005-103: "Can an Arkansas county quorum court enter into a binding contract for 10 years or more for services rendered from a private facility?" In his discussion of this issue, my predecessor offered the following observations:
 Multi-year contracts entered into by counties or cities are not per se unconstitutional. See Government Service Automation, Inc. v. Faulkner County, 929 F. Supp. 338, 341 (E.D. Ark. 1995). As explained in Government Service Automation, Inc.:
 What is prohibited by [art. 12, § 4] are contracts in an amount which `exce[eds] . . . the revenue . . . for the fiscal year in which said contract . . . is made;. . . .' Art. 12, § 4. In cases requiring the interpretation of that part of the Constitution, the Supreme Court has consistently held that contracts made in one year which must be paid for with the revenues of a subsequent year are prohibited. "To make a contract in one year to be paid out of the revenue of a succeeding year is a violation of [the Constitution]." Goodwin v. State, 235 Ark. 457, 360 S.W.2d 490, 494
(1962), citing Little Rock v. White Company, 193 Ark. 837, 103 S.W.2d 58 (1937).
 The party seeking to void a contract under art. 12, § 4 bears the burden of showing that it was unconstitutional. See Dailey v. City of Little Rock, 227 Ark. 537, 539, 299 S.W.2d 825, (1957) (stating that "[t]he burden was on the appellant to show that performance of the agreement would require an expenditure of revenues by the City in excess of those for the year in which the contract was made.")[2] *Page 6 
This passage might be read as meaning that the only pertinent question with respect to the constitutionality of a contract is whether the financial obligation incurred over the term of the contract would exceed revenues available in the year the contract was made. Cf. Hink v. Boardof Directors of Beaver Water District, 235 Ark. 107-10, 357 S.W.2d 271
(1962) (striking as constitutionally impermissible a 50-year contract for the purchase of water when "the total purchases under this contract would exceed the current revenues of each city"). However, my predecessor in Opinion 2005-103 qualified the passage recited above as follows:
 The question may also arise whether funds for the first fiscal year of the contemplated contract are available at the time of contracting. Cf. Government Service Automation, Inc. Another factor to consider is whether payment and performance obligations for succeeding fiscal years are subject to the availability and appropriation of funds therefor. The Arkansas Supreme Court has explained the purpose and effect of art. 12., § 4, by stating that it is the intention of this constitutional provision ". . . to make the revenue of each year pay the indebtedness incurred during that year, and that the revenue of a subsequent year should not be applied to pay the liability of a past fiscal year. . . ." Lake v. Tatum, 175 Ark. 90, 93, 1 S.W.2d 554 (1928) (emphasis added). See also Little Rock Road Machinery Co. v. Jackson County, 223 Ark. 53, 342 S.W.2d 407
(1961). Accordingly, the presence of a so-called "opt out" provision is another factor that may affect the validity of your hypothetical contract. Cf. Government Service Automation, Inc.
(First emphasis added.)
The court's ruling in Government Service Automation, Inc. is confusing in a way that tracks prior Arkansas case law. After having acknowledged the Arkansas case law suggesting that one primary concern in determining the constitutionality of a multi-year county contract is whether funds to discharge the entire contract are available in the year the contract is made, the federal court, relying on Arkansas case law, appears to have sanctioned the opposite, common-sense conclusion — namely, that a contract will pass constitutional muster so long as annual revenues over the term of the contract are sufficient to fulfill the annual obligation for each fiscal year. Specifically, the court offered the following analysis: *Page 7 
 In Searcy County v. Horton, 270 Ark. 22, 603 S.W.2d 437 (1980), the Court considered the constitutionality of a 12 year lease for office space between lessor Horton and lessee Searcy County. Entered into in 1975, the agreement required the County to pay $180 per month during the life of the lease. In April, 1979, the County decided it did not need the space any more and refused Mr. Horton's demand for payment, despite the fact the Searcy County quorum court had already "appropriated sufficient funds to pay the rent on the office for all of 1979."
 In determining that the contract was constitutional, the Court of Appeals seemed to focus on the County's obligation in a particular fiscal year vis-à-vis its revenues for that year.
 The burden was upon [the county] to prove that the contract incurred an obligation on the part of the county in excess of the revenues for a fiscal year, and no such proof appears in the record. Under the lease the county became obligated to pay rental only currently as the office space is available for use, there is no showing such obligation would exceed revenues for any fiscal year, and the quorum court in 1979 appropriated sufficient funds to pay the rent on the office for all of 1979.
 Id., 603 S.W.2d at 438 (emphasis added). Conspicuously absent is any reference to revenues for 1975, the year the contract was entered into. The opinion concludes: "It is true the county cannot pay if the payment would be in excess of the revenue for the year. The record does not show this to be the case. Id., 603 S.W.2d at 439
(emphasis added).
 . . . [I]t is apparent that the Court never suggested that either first year revenues or subsequent annual revenues had to exceed the full lifetime amount of the contract . . . .
929 F. Supp. at 341-42 (emphasis added). *Page 8 
In what may be dictum, the court in Government Service Automation,Inc. went on to address a question it anticipated would arise later in the litigation — namely, whether the inclusion of an opt-out or nonappropriation provision in the contract at issue cured what might otherwise have been a constitutional infirmity. 929 F. Supp. at 341-43. The court summarized the opt-out provision at issue in its case as providing that "each year the County, subject to the notice requirements of the contract is free to terminate the agreement with GSA for any reason except to simply replace a satisfactorily performing GSA with another computer company." Id. at 343.[3] The court concluded its analysis by remarking:
 Because the County is only "on the hook" for one year at a time, the Court finds that the proper dollar figure to use when making the "obligation vs. revenue" comparison is the annual fee under the contract. . . . In other words, if that amount could have been paid for with the revenues received during the first year of the contract, the agreement does not run afoul of Article 12, Section 4 of the Arkansas Constitution.[4]
Despite the Arkansas Supreme Court's sometimes confusing pronouncements on this issue, I subscribe to the court's straightforward declaration that it is the *Page 9 
intention of Article 12, § 4 ". . . to make the revenue of eachyear pay the indebtedness incurred during that year, and that the revenue of a subsequent year should not be applied to pay the liability of a past fiscal year. . . ." Lake v. Tatum, 175 Ark. 90, 93,1 S.W.2d 554 (1928) (emphasis added).
In its letter opinion, the Association of Arkansas Counties may have concluded that the failure to include a nonappropriation clause in the ten-year contract here at issue was constitutionally fatal to the contract — a conclusion that might be read as consistent with at least some of the authorities recited above but which, in my estimation, is not necessarily inevitable. As the court noted in Williams v.Harris, 215 Ark. 928, 932, 224 S.W.2d 9 (1949):
 Any contract which the city makes in regard to uncollected revenues from any source must be construed with reference to [Amendment 10]. Parties cannot, by pleading or stipulations of any kind, abrogate this amendment which will be read into any contract which the city may make.
(Emphasis added.) Accord Woodend v. Southland Racing Corp.,337 Ark. 380, 384,989 S.W.2d 505 (1999) ("It is also well settled that the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract. Mahurin v. Oaklawn JockeyClub, 299 Ark. 13, 771 S.W.2d 19 (1989). "). Applying this principle to the wood-waste contract referenced in your request, it is at least conceivable that a reviewing court might read the financing restrictions set forth in Article 12, § 4 into the contract itself, in effect providing that an implied nonappropriation clause must be given effect in any fiscal year in which the annual contractual obligation exceeds available revenues. Having raised this possibility, I must note that no court appears ever to have explored this option in litigation challenging the constitutionality of a contract under Article 12, § 4.
Question 2: If it is not legal or constitutional, what options does acounty have if such a contract has been signed?
Determining what course the county should take if the contract is deemed illegal will entail conducting a close factual analysis of the contract and, possibly, of the circumstances giving rise to its execution. Assuming the contract were deemed void ab initio, see
discussion infra, further performance under the original contract could obviously not proceed. The question of whether the parties might modify *Page 10 
the contract to remedy any possible constitutional problems is intensely factual and should rightly be addressed by the parties themselves in consultation with counsel. The related question of whether the contractor in this instance might be entitled to some recovery on a theory of unjust enrichment is likewise highly factual and beyond the scope of an official Attorney General's opinion. I will note, however, that the Arkansas Supreme Court has offered the following summary of generally applicable law in a case of this sort:
 We find that the unjust enrichment principle is firmly embedded in Arkansas law in the context of work performed pursuant to illegal contracts made by political subdivisions such as cities and counties. We alluded to it as recently as 1980 in a case where we ultimately found a valid contract to exist. McCuistion v. City of Siloam Springs, 268 Ark. 148, 594 S.W.2d 233 (1980). We have permitted restitution based on unjust enrichment even when the associated contract was "void." City of Little Rock v. The White Co., 193 Ark. 837, 103 S.W.2d 58 (1937); International Harvester Company v. Searcy County, 136 Ark. 209, 206 S.W. 312 (1919). Cf. Revis v. Harris, 219 Ark. 586, 243 S.W.2d 747
(1951).
City of Damascus v. Bivens, 291 Ark. 600, 602-03, 726 S.W.2d 677 (1987).
Question 3: Is such a contract voidable or void ab initio?
Contracts in violation of Article 12, § 4 are wholly void. Warren v.State, 232 Ark. 823, 340 S.W.2d 400 (1960). As noted above, the burden lies upon the challenger to establish that a particular contract fails the balancing test between available revenues and contractual obligations discussed above. As one of my predecessors further noted in Op. Att'y Gen. No. 89-111:
 A county may not incur any obligation in any year which exceeds the revenues of that year, and, if this is done, such obligation is void and cannot be paid out of the revenues of the succeeding year.
 Numerous other cases hold if a county enters into such a contract, it will be deemed wholly void by the Supreme Court and cannot be paid [out] of the revenues of the succeeding year. Dixie Culvert Manufacturing Co. v. Perry County, 174 Ark. 107, 109, *Page 11 294 S.W. 381 (1927); City of Little Rock v. White Co., 193 Ark. 837, 839, 103 S.W.2d 58 (1937).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] As reflected in my textual analysis of Article 12, § 4, I am less inclined to accept the Association's suggestion that the necessity of including a nonappropriation clause in a multi-year contract will depend on "the aggregate sum of the contractual obligation." Again, I believe Article 12, § 4 supports the conclusion that the constitution bars only entering into a multi-year contract that would oblige the county to make an allowance in excess of available revenues in any given fiscal year.
[2] Relying on case law that does not bear on your question, my predecessor further opined that this rule might not apply if the multi-year obligation could be discharged only from revenues generated by the project being funded.
[3] The "opt out" provision, captioned a "Funding Out Provision," expressly provided as follows:
 The continuation of this agreement until 02/02/98 shall be subject to the approval of the annual cost of this agreement by the County's Quorum Court as an approved item of the county's Annual Budget. Should this agreement fail to be approved as an item in the annual County budget, the County will notify GSA in writing and the operation of this agreement shall fully terminate within sixty (60) days of the date of such notice is received or at an earlier date if so agreed by the parties of this agreement. Provided however, that the County shall not during the state term of this Agreement enter into any agreement or arrangement under the terms of which funds subject to the County's control would be expended to provide the County services provided under this agreement without paying to GSA all funds due under the terms of this agreement for its full stated term.
[4] Although it does not bear directly on your question, I find the court's analysis of this opt-out provision somewhat troubling in one respect. The opt-out provision set forth at note 3, supra, does considerably more than leave the county "on the hook" for only one year at a time. Rather, it contains an acceleration clause obligating the county to pay the full five-year term of the contract in the event the county (a) exercises its right to terminate early and (b) takes some undefined steps, as it might very well do, to contract with another entity to provide computer hardware and services. The opt-out clause might thus have obligated the county in one fiscal year to pay the entire remaining balance of the contract — a condition that would clearly violate Article 12, § 4 if the revenues in the year the remaining balance came due proved to be inadequate to discharge the debt.

 *Page 1